San Antonio Gas & Electric Company v. Mrs. Senovia Ocon et al.

### No. 2204.   Decided April 10, 1912.

**1.—Negligence—Electric Company—Wires in Street.**

An electric lighting company is not to be held negligent nor liable for injury in case of one using the street of a city by the mere fact that a wire erected by others for the purpose of obtaining the temporary use of its current, though attached for that purpose to one of its poles and supplied with a switch for connection with its electric wires at that point, was so stretched by the parties erecting it as to sag down and, though uncharged at the time, cause the death of one lawfully using the street by coming in contact with his vehicle and throwing him therefrom. (P. 142.)

**2.—Same.**

Liability of an electric company for negligence in the construction and maintaining of wires connecting with its own, but not erected or controlled by it, can only rest on its duty to use care against injury by the dangerous current, which did not arise where the injury was from an uncharged wire, or from its duty to maintain its wires so as not to interfere with the proper use of the streets, which did not apply where it had no notice that the wires of others, connected with its structures, were so maintained as to be a dangerous obstruction. (Pp. 142, 143.)

**3.—Same—Cases Distinguished.**

San Antonio Edison Co. v. Dixon, 17 Texas Civ. App., 320, followed. Wehner v. Lagerfelt, 27 Texas Civ. App., 520; Washington Gas Light Co. v. District of Columbia, 161 U. S., 316, and other cases, discussed and distinguished. (Pp. 144, 145.)

**4.—Same—Case Stated.**

An electric light company undertook to furnish gratuitously the current for lighting a public park of the city at a popular celebration. The committee in charge thereof were to erect the wires and make the necessary connection therefor, and employed a contractor to do so. The latter erected a wire across a public street, attached to a pole carrying the wires of the company, and connected with them, at that point, by a switch for receiving the current. This wire, erected originally at a proper height over the street, became sagged down so as to catch an umbrella fastened to the seat of the vehicle of one driving in the street, and he was thereby thrown out and killed. The wire was uncharged at the time; the company had no notice that it was out of place or interfering with the use of the street; and it had exercised no control over the erecting or maintaining of these wires. Held that no negligence on the part of the electric light company was shown and it was not liable for the injury. (Pp. 141-146.)

Error to the Court of Civil Appeals, Fourth District, in an appeal from Bexar County.

Mrs. Ocon and others sued the electric light company and had judgment, which was affirmed on appeal by defendant. Appellant then obtained writ of error.

*Ogden, Brooks & Napier,* for plaintiff in error.—The undisputed evidence in this case shows that the defendant San Antonio Gas and Electric Company, neither constructed, owned nor controlled the wire by which it was claimed the deceased, Jacinto O'Con, was injured; and therefore the said defendant was not liable and a verdict should have been instructed in its favor.   Holmes v. Union Tel. & T. Co., 16 N. Y. Supp., 563; same case, 139 N. Y., 651; Quill v. Empire St. Tel. & T. Co., 53 N. E., 679.

*Thad. F. Adams, A. F. W. McManus,* and *Newton & Ward,* for defendants in error.—If appellant allowed the wires to remain suspended from its pole in a dangerous condition, it is liable in damages due to its negligence whether the wires were owned by it or by anyone. Thomas v. Telegraph Co., 100 Mass., 156; Memphis St. Ry. v. Kartwright, 75 S. W., 720; Clemans v. Louisiana Elec. L. Co., 32 Am. St., 348; Haynes v. Raleigh Gas Co., 41 Am. St., 786; G. C. & S. F. Ry. Co. v. McWhirter, 77 Texas, 356; 28 Cyc., 894, 1379; Weaver v. Dawson Co. M. Tel. Co. (Neb.), 118 N. W., 650; 16 A. & E. Enc., 191; Wallace v. So. C. Oil Co., 91 Texas, 18; 16 A. & E. Enc., 197, 206, 207; Tex. etc. R. R. Co. v. Juneman, 71 Fed., 939; 10 A. & E. Enc., V. 870, 872, 873; Texarkana Gas Co. v. Orr, 59 Ark., 215; Lundeen v. Livingston Elc. L. Co., 17 Mont., 32; Wehner v. Lagerfelt, 27 Texas Civ. App., 502; 4 Green's Digest, sec. 1, art. C., p. 8479; I. & G. N. Ry. Co. v. Kuehn, 70 Texas, 587; Texas etc. Ry. Co. v. Brown, 11 Texas Civ. App., 508; Mo. etc. Ry. Co. v. McGlamory, 34 S. W., 360; Galveston etc. Ry. Co. v. Matula, 79 Texas, 582; Lindsey v. Storrie, 55 S. W., 370; Brush Elec. Light & Power Co. v. Lefevre, 55 S. W. 396; 93 Texas, 604; 21 A. & E. Enc., 495, 496, 515; O'Connor v. Andrews, 81 Texas, 29; Citizens R. R. Co. v. Creasy, 27 S. W., 945; Galveston etc. Ry. Co. v. Croskell, 6 Texas Civ. App., 160; S. W. Telephone Co. v. Crank, 27 S. W., 38; Gulf etc. Ry. Co. v. Benson, 69 Texas, 407; Western U. Tel. Co. v. Rust, 120 S. W., 249.

MR. JUSTICE DIBRELL delivered the opinion of the court.

This was a suit by the widow and children of Jacinto Ocon against the San Antonio Gas & Electric Company, Martin Wright and the City of San Antonio to recover damages for his death alleged to have occurred by the joint negligence of said defendants.

It was alleged by plaintiffs that while Jacinto Ocon was driving a delivery wagon along a public street in the City of San Antonio, the umbrella attached to the seat of the wagon came in contact with a wire stretched across the street, and thereby the seat on which he was riding was pulled off and he was thrown to the ground and received injuries from which he died.

It was also alleged that the wire was stretched across the street by the defendant, Martin Wright, an electrical contractor, for the defendant, San Antonio Gas & Electric Company, and when completed was turned over to the Gas & Electric Company.

The grounds of negligence set out and relied upon as relating to the wire were that it was improperly insulated, improperly strung on the poles in such a way as to make it a constant danger to the traveling

public, and its manner of stringing was in violation of the ordinances of the city, less than twenty-five feet above the curbing. Greater particularity in stating plaintiffs' pleadings is not essential to a full understanding of the material issues involved.

The City of San Antonio was dismissed from the suit upon the ground that a municipal corporation could not be liable for an injury resulting in death.

Martin Wright, among other things, pleaded specially the statute of limitations, upon which the jury were instructed by the court to find in his favor.

San Antonio Gas & Electric Company, among other pleas not necessary to mention, pleaded that it was not responsible for the death of Ocon, because the wire mentioned in plaintiffs' petition was neither constructed, owned nor controlled by it.

The cause having been tried with the assistance of a jury verdict was rendered for plaintiffs for $5,000.00 and duly apportioned among those entitled to receive it.

The material facts developed in the case are practically without dispute, and show that in September, 1907, the Mexican people of San Antonio, wishing to celebrate some event of interest to them, appointed a committee to confer with the defendant, San Antonio Gas & Electric Company, and arranged for lighting San Pedro Park where the celebration was to take place. The committee conferred with the general manager of the Gas and Electric Company and it was agreed that this company would furnish free of charge the electric current for lighting the Park, if the committee for the Mexican people would put up the wiring and provide everything for the reception of the current. In pursuance of this understanding the wire with which the umbrella on deceased's wagon came in contact was erected by the defendant, Martin Wright, through one of his employes, at the request of and for the committee for the Mexican celebration, and he was paid for the work by this committee. The committee directed the electrical contractor where to place the wires and all poles and other material was supplied either by the committee or the electrical contractor, and the San Antonio Gas & Electric Company gave no instruction as to where or how to place the wires and had nothing to do with placing the wire across the street. In preparing the wires for receiving the electric current the contractor for the Mexican society attached one to the pole of the Gas & Electric Company extending across one of the public streets of the City. This was the wire upon which the umbrella attached to the deceased's wagon was caught and by which he was thrown from the wagon receiving injuries from which he died. Where this wire was attached to the Gas & Electric Company's pole a switch was there placed by the contractor for the committee, and the point where the wire in question left the pole was twenty-five or thirty feet above the street curbing. After this wire was attached to the pole and a switch placed there by the committee's contractor the Gas & Electric Company did nothing more than to run a connection from the transformer to its pole down to the side of the pole to the point where the committee had directed a switch placed and by the means of a short wire connect with the top of such switch. When the wire

was thrown down it was repaired by Martin Wright, the electrical contractor, and after the celebration was over, having lasted for three days, the electrical contractor had his employes take the wires down and return them to his shop. The current furnished by the Gas & Electric Company was connected with the wire in question by means of throwing the switch which was placed on the pole by the defendant, Martin Wright, and this switch was thrown each night by the park policeman at the instance of the celebration committee in order to secure the current. At the time of the accident the current was not on the wire complained of. The Gas & Electric Company received no compensation for furnishing the current. The facts do not disclose how long the wire across the street from which contact with the wagon caused the death of Ocon was in a swagging condition, but it was shown that on the night previous the wire was up and properly constructed.

The question involved in this case does not embrace the liability of defendant, Gas & Electric Company, for damages resulting from contact with the dangerous and potent force of an electric current. The uncontradicted facts exclude that issue, and we are circumscribed to the sole question of its liability for damages resulting from contact with a plain wire strung, owned and controlled by others than the Gas & Electric Company. The only connection with the wire in question attributable to this company is its tacit or implied consent that the wire might be attached to its pole for the purpose of furnishing the owners or lessees of the wire the electric current for temporarily lighting the park for a celebration conducted by such owner or lessees.

The evidence discloses without dispute that the wire in question was in the beginning properly strung, and that its sagging condition occurred afterwards. It was not shown by the evidence at what time the defective condition of the wire occurred, or how long it had remained in such condition, or that the condition the wire was in at the time Ocon's umbrella came in contact with it was known to this defendant. We think that at the time the implied consent of this defendant to its co-defendant, Martin Wright, or the committee for the Mexican celebration, was given to attach the wire to its pole in so far as any injury might result from such wire, independent of the electric current, by reason of its improper construction this defendant was not legally bound to see that the wire was properly strung, and in the absence of actual knowledge that it was improperly or defectively strung the Gas & Electric Company would presume that those who were in charge of stringing the wire and for whose benefit it was strung would perform the work in a proper manner and in compliance with the city ordinances. We do not wish to be understood as holding that this rule is applicable in so far as it relates to the electric current and as to injuries received by third parties from such current, for we think a different rule applicable in such case, but solely upon the ground that "electricity is a silent, deadly and instantaneous force, and one who uses it for profit is bound to exercise care corresponding to the dangers incident to its use." Rowe v. Taylorville Elec. Co. 213 Ill., 318; McLaughlin v. Louisville Elec. Co. 100 Ky.,

173 34 L. R. A., 812, 37 S. W. 851, (34 L. R.A. 812) ; Cooly on Torts, 1492.

Nor do we wish to be understood as holding that if the defective condition of the wire was known to the Gas & Electric Company the duty did not devolve upon it to see that the wire was repaired or detached from its pole. However, the doctrine of knowledge or notice from the exercise of ordinary care cannot, we think, be invoked in such case as to the defective condition of the wire independent of the deadly current, but actual notice to the Gas & Electric Company of the wire's defective condition must have been shown. This arises from the fact that the Gas & Electric Company was under no obligation to repair the wire of its co-defendant or to see that the wire was properly strung except when the electric current was on and where the injury resulted from such current. Again we do not wish to be understood in this connection as holding that actual knowledge of the wire's sagging condition on the part of the Gas & Electric Company would as a general rule and under ordinary circumstances where others were permitted simply to attach their wire to its pole as in this instance, create a liability against such company, but we think liability in case of actual notice of the defective condition of the wire would arise only in a case like the one under consideration where the injury was inflicted upon one using a public thoroughfare. Safety to one in the use of a public street or thoroughfare demands the application of a different rule than should be applied to places of a private or less public character. This would seem to be just since under such circumstances the Company is authorized to detach such wire from its premises, and we think that even though there was not primarily any obligation imposed upon this Company to use any care to see that the wire was properly strung without respect to the electric current and therefore strictly speaking the doctrine of negligence is not applicable, yet such obligation would arise from its continued consent to the use of its pole after knowledge of a condition of the wire as a constant menace of danger to the safety of public travel.

We venture to assert that no text book or case can be found that carries the doctrine of negligence farther than we have here announced it, but we do not think we have gone further than justice and expediency demand. It is clearly the right of a public service corporation obliged to exercise its functions for the convenience and benefit of the public, to demand the detachment of a wire negligently or defectively strung to its pole when notice of such defective condition of the wire has been received and the failure to act with reasonable promptness under such circumstances will make its negligence concurrent with that of the owner of the defective wire attached to its pole when the safety of public travel is endangered. This rule, however, does not affect the present case since it was not shown that the Gas & Electric Company had notice of the sagging of the wire.

There is no difference of opinion as to a number of legal propositions presented in support of the cause of action here sought to be maintained against the Gas & Electric Company, but we do not think they are in the remotest degree applicable to the facts of the case. For instance it is not denied that where a party sustains an injury

from the concurring negligence of several, he may recover therefor against all or either of them. But what fact is there in this case that tends to show that there was any negligence or concurring negligence on the part of the Gas & Electric Company tending to cause the injuries of Ocon from which he died? It cannot be said the negligence arising from the sagging wire across the public street in violation of the city ordinances was its neglect, for the most potent reason that the wire was not so strung or so allowed to sag and remain in that condition across the street by the Gas & Electric Company since the undisputed facts show that the company had nothing to do with the stringing of the wire, nothing to do with placing it across the street, no control over the wire, no ownership of or interest in the wire, nothing to do with securing the permit from the city to string the wire and no notice of its condition. In short the evidence fails wholly to show there was any duty on the part of this company that it owed to the deceased or the public the violation of which was shown in order to constitute negligence. It was not the duty of this defendant to repair the defective wire, or to in any manner interfere with its position in the absence of knowledge of its condition.

In order to impute negligence to this defendant it was necessary to show that it violated some duty it owed to the public and to the deceased as a component of the public or to him personally by reason of some other connected relationship. Unless the death of Ocon was due to the breach of some duty this Company owed him, there could be no recovery against it in this action. Negligence is imputable only for a breach of an existing duty due by the person sought to be held responsible. San Antonio Edison Co. v. Dixon, 17 Texas Civ. App., 320, 42 S. W., 1009; 15 Cyc. 475; 1st Thompson on Neg. Sec. 3.

To hold that the care devolves upon such public service corporation as the Gas & Electric Company to look after the construction and maintenance of wires installed by or under the direction of private persons or concerns, without reference to their adaptibility to safely carry the electric current, would impose upon such companies burdens so great as to clearly render their existence and hence their service to the public impracticable if not impossible. It is not necessary to enlarge upon the disagreeable consequences of such a ruling but it should be enough to say that such a doctrine is repugnant to reason and justice. It would not only make Cain the keeper of his brother Abel, but would impose upon him a vicarious atonement for the sins of his brother, whether of omission or commission.

We have been cited by learned counsel for defendants in error to a number of cases thought to bear upon the question presented by the facts of this case, but we are not able to appreciate their analogy to the case at bar. The case of Wehner v. Lagerfelt, 27 Texas Civ. App., 520, 66 S. W., 221, was for damages received from an electrical shock under the following circumstances: "One of the electric wires, so maintained and operated by appellants, was suspended from poles along the north side of San Antonio street, one of the principal thoroughfares of the city of El Paso, and charged with a strong and dangerous current of electricity. Below and near this wire was suspended from the same pole one that was uninsulated, the end of

which was broken and hanging within a foot or two of and above the sidewalk on the north side of said street. The insulation of the upper wire, through which the strong electric current was conveyed, was worn and abraded. In contact with one of its abrasions was a small bale wire, which extended therefrom, and rested upon the uninsulated and broken wire beneath, thereby conveying to and charging it with a strong and dangerous current of electricity from the defectively insulated wire above, thus rendering the uninsulated hanging wire very dangerous to persons passing along said street and sidewalk. This dangerous condition of the wire existed on the day of the injury, and had been maintained continuously for about two weeks prior to and up to that time, and, by the exercise of ordinary care could and should have been known by the appellants. The plaintiff, Dagmer Lagerfelt, a little ten year old girl, while walking along said sidewalk in ignorance of the danger, came in contact with the uninsulated hanging wire, charged with a strong and dangerous current of electricity in the manner and by the means aforesaid, was seriously and painfully injured.''

The mere statement of the case makes apparent its lack of similarity to the case under consideration. The wire permitted to hang from the defendant's poles in that case was heavily charged with an electric current, and was within one or two feet of the sidewalk and from the ground. This was clearly negligence, notwithstanding the piece of wire belonging to another. The wire itself was uninsulated and so was the wire of the defendant in that case connected with the hanging wire defectively insulated and heavily charged with a dangerous current. The Court of Civil Appeals correctly held the defendant chargeable with the knowledge of the condition of the wire, but such holding throws no light upon the case at bar.

The case of Washington Gas Light Co. v. The District of Columbia, 161 U. S., 316, was a suit by the District of Columbia to recover judgment for an amount it had been required to pay Marietta M. Parker for injury she received by stepping into an open gas box, constructed in the sidewalk. Mr. Justice White who wrote the opinion in that case states the evidence to have been that the gas box in question was placed by the Gas Company in the center of the sidewalk in the city of Washington in 1873, it being one of the customary appliances used by the company when connecting its main with a house where gas was to be used; that this box consisted of an iron cylinder four inches wide and two and a half feet deep, with an iron cover. The box served the purpose of affording access to a cock in the service pipe, which latter conducted the gas from the main of the company to the gas meter in the house, whence it was carried to the burner. By means of this box or cylinder on removing the cover therefrom with a key made for the purpose, the cock in the service pipe could be reached, and the gas be thus turned on or off from the house. This box was placed in the sidewalk so as to be level with its surface, and the cover thereon was held in place by lugs which slipped into slots made for the purpose. The box was put in by the company in accordance with its general method used for introducing gas, and in compliance with the form of structure pointed out by an ordinance of the Board of Com-

mon Council of the City of Washington. The gas box was put in at the request of the owner of the premises in front of which it was situated. It was constructed by the gas company, which furnished the materials, and worked as any other plumber would have done, being paid therefor by the owner of the premises. In order to do this work the gas company had first to obtain from the City permission to open the street to make the requisite connection, and paid to the District a permit fee of one dollar. When the gas box was first constructed it was done in a proper manner, but at the time of the injury and for some time before was out of repair and in a defective condition. It was shown that in case the owner of the premises ceased to take gas the box became the property of the gas company, and that company never permitted the owner of the premises to have a key to the box and the company exercised exclusive control, maintenance and supervision of the gas box.

It will be observed from the statement of the case that the duty of the gas company was to maintain the gas box over which it had exclusive control, from which fact it logically follows that a failure to do this in a proper manner would constitute negligence from which liability would issue. The case is in no essential particular analogous to the one under consideration, and cannot serve as a guide in its disposition. The two cases thus analyzed are the ones upon which counsel placed the greatest stress, and it is not essential to review the others. In fact we have been unable to find any case in the books and we have been cited to none that are similar in the facts upon which recovery in this case is sought. Likewise the text books we have consulted are barren of authority relevant to the subject. The case has been given careful consideration, and we are unable to find substantial legal ground upon which to approve the judgment of the Honorable Court of Civil Appeals in affirming the judment of the lower court. The cause will therefore be reversed and here rendered for the plaintiff in error, San Antonio Gas & Electric Company and it is so ordered.

*Reversed and rendered.*