### TEXAS ELECTRIC SERVICE CO. v. ANDERSON et al.

### No. 12730.

Court of Civil Appeals of Texas. Fort Worth.
Nov. 12, 1932.

Rehearing Denied Dec. 10, 1932.

T. R. Boone and E. T. Duff, both of Wichita Falls, for appellant.

E. W. Napier, of Wichita Falls, for appellees.

LATTIMORE, J.

This is an appeal from a judgment in favor of various members of the family of Oda Anderson for damages against appellant for his death. Appellant owned a "high line" by which it delivered electricity for profit. The lease of the Buckeye Petroleum Company was operated by electricity bought from and delivered by appellant. An auxiliary line of appellant ran from its high line to a pole, which there is disputed evidence to show was appellant's, and thence into the "power house" of the Buckeye Company where it was connected to the meter which measured the electricity and at which point same was delivered to the Buckeye Company and from which meter, on the "customers' side," lines of the Buckeye Company carried the electricity to the various points of use. From this power house a line for electricity ran out and may have been attached to appellant's pole above mentioned and thence away from the high line and the Buckeye Company's lease over a hill. Contest was made over where it connected with the source of electricity and to whom it belonged. At the time of this accident it had been severed just over the hill, the remainder beyond had disappeared. A telephone line some five feet high ran under it.

With the passage of time these abandoned electric wires sagged until they were close to, or in contact with, the telephone wire.

The deceased lifted the telephone wire to pass beneath it and the contact of the telephone wire with the electric wire carried the electricity through his body, killing him.

On trial before a jury the following issues were submitted and answers returned:

"1. Do you find from a preponderance of the evidence that the defendant knew prior to the first day of October, 1925, of the dangerous condition of the wires in question? Answer: Yes.

"2. If you have answered special issue No. 1 'no' you need not answer this issue, but if you have answered such issue 'yes' then do you find from a preponderance of the evidence that a reasonably prudent person, situated as the defendant was situated, knowing of such condition would have continued to transmit electric current to said wires? Answer: No.

"3. If you have answered special issue No. 2 'yes' you need not answer this issue, but if you have answered such issue 'no', then do you find from a preponderance of the evidence that the defendant's continuing to transmit electric current into said wires was a proximate cause of the death of O. B. Anderson? Answer: Yes.

"4. Do you find from a preponderance of the evidence that the defendant owned the wire which came in contact with the telephone wire, prior to and on October 1st, 1925? Answer: ———.

"5. If you have answered special issue No. 4 'no' you need not answer this issue, but if you have answered such issue 'yes' then do you find from a preponderance of the evidence that a reasonably prudent person, situated as the defendant was situated, would have discovered the dangerous condition of said wires prior to October, 1925? Answer: Yes.

"6. If you have answered special issue No. 5 'no' you need not answer this issue, but if you have answered such issue 'yes' then do you find from a preponderance of the evidence that the defendant's failure to discover the dangerous condition of said wire, if they did fail to do so, was a proximate cause of the death of O. B. Anderson? Answer: Yes.

"7. If you have answered special issue No. 1 'yes' and if you have also answered special issue No. 4 'yes' then do you find from a preponderance of the evidence that the defendant was guilty of negligence in failing to remove said wire? Answer: Yes.

"8. If you have answered special issue No. 7 'no', you need not answer this issue, but if you have answered such issue 'yes' then do you find from a preponderance of the evidence that such negligence, if any, was a proximate cause of the death of O. B. Anderson? Answer: Yes.

"9. Do you find from a preponderance of the evidence that O. B. Anderson's death was not the result of an unavoidable accident? Answer: It was not an unavoidable accident.

"10. What sum of money do you find from a preponderance of the evidence, if paid now in cash, would reasonably compensate the plaintiffs for the death of their father; and in this connection you are instructed that you cannot allow anything for their sorrow or mental anguish, or loss of companionship, but you can only take into consideration the present pecuniary value of the support, moral and intellectual training that the plaintiffs would have received from their father during their minority had he lived, and you shall apportion such amount among the plaintiffs in such manner as you find from a preponderance of the evidence would be just and proper?

"Edmond Anderson, $3,500.00; Earl Anderson, $3,500.00; Freeland Anderson, $3,500.00; Sarah Anderson, $4,500.00.

"Special requested charge No. 17. Do you find from a preponderance of the evidence that the two electric light wires that came in contact with the telephone wire (if they did) was connected at the power house on what is known as 'the customers' side' of the meter? Answer: ———."

It is thus apparent that so much of liability as was predicated upon ownership of the electric wires, or control over their connection with appellant's line, cannot be a basis for the judgment which must rest wholly on answers to issues one, two, and three. We have then, from the standpoint of this appeal, this situation: The appellant was selling its product, a proper commercial product, but one which was quite dangerous if not properly handled, and delivering it to the purchaser. The purchaser was, as this appellant knew, allowing it to be used in a dangerous manner. The liability for negligence of an electric distributor furnishing electricity for profit to be carried by the purchaser on poles and wires of purchaser's own, for injuries occurring by the defective wires, etc., of such purchaser, which defects were known to the distributor who thereafter continued to deliver such electricity into these wires, seems to be established by the trend of authorities in this state. International Electric Co. v. Sanchez (Tex. Civ. App.) 203 S. W. 1164. However, the cases cited in that opinion do not support it except by dictum. Likewise the dictum of San Antonio Gas & Electric Co. v. Ocon, 105 Tex. 139, 146 S. W. 162, 164, 39 L. R. A. (N. S.) 1046: "But actual notice * * * must have been shown. This arises from the fact that the Gas & Electric Company was under no obligation * * * to see that the wire was properly strung, except *when the electric current was on*." (Italics ours.) "We do not wish to be understood as holding that this rule" (nonliability for dangerous sagging line of another) "is applicable, in so far as it relates to the electric current and as to injuries receiv-

ed by third parties from such current, for we think a different rule applicable in such case, but solely upon the ground that 'electricity is a silent, deadly, and instantaneous force; and one who uses it for profit is bound to exercise care corresponding to the dangers incident to its use.'" In that case the injured person was dragged from his vehicle by the wire but not injured by electricity. The cases of other states with two exceptions contain numerous like expressions.

▆ To the claim that appellant knew of this dangerous situation, appellant replied that it did not know of it and that the only person who should have foreseen this situation was the owner of the idle electric line, and requested the issue whether the acts of the owner of the wire, on allowing it to sag so as to come in contact with the telephone wire, was the sole proximate cause of the accident. If the owner allowed the wire to sag and was negligent or indeed was malicious in doing so, it would not excuse the appellant. Indeed, the very liability of the defendant did not arise until such sagging took place. It is true that in a remote sense this question requested involved the finding that defendant did not know of the dangerous situation, but such a remote inference to be drawn from such a finding appears to us too unworthy of justifying a new trial. The law authorizing special verdicts was enacted to obviate prejudice and emotional verdicts by requiring the jury to find the ultimate facts at issue. Its value was at once recognized so that now almost all jury verdicts in civil cases are on special issues. Of late, a trend appears in the appellate courts to multiply and increase the issues which a jury must pass on until it takes a Philadelphia lawyer on the jury to furnish a verdict that will answer the requirements. Jurors, laymen, not schooled in the law, ordered to the jury room by a trial judge who is by the law gagged against aiding them, wade through the bewildering maze of special issues, often seventy-five or eighty in many cases, and many of them to their minds contradictory, wholly unable to cope with the unnecessary situation. Those of us who have had to endure this situation on the trial bench of recent years wonder if, and hope, the end of it is in sight.

▆▆ If the appellant knew at all of the dangerous situation, the evidence is undisputed that it knew of same in ample time to remedy the same, hence the submission of such issue was unimportant. Appellant complains of issue No. 1 as assuming that the condition of the wires was dangerous, but the grave of Oda Anderson is eloquent if a silent answer that same were indisputably dangerous. The charge in this did not assume a disputed issue. We think that the issue, however, did not confine the issue of what the "dangerous condition" of the wires was, to the condition alleged in the pleadings to have been proven to defendant, and that on another trial this question should be confined to the identical condition alleged.

▆ Special issue No. 10 assumed that the plaintiffs would have received support and training from the deceased had he lived, and that the jury was in favor of awarding some sum to the plaintiffs and this was error. Gulf, C. & S. F. R. Co. v. Phillips, 35 Tex. Civ. App. 337, 80 S. W. 107; Northern Texas Traction Co. v. Peterman (Tex. Civ. App.) 80 S. W. 535.

▆ Special issue No. 9 was erroneous in that the negligence of "either party" does not meet this situation under the court's definition of "unavoidable accident." The plaintiffs, each, were a "party," if the term was used in its legal sense. If in its common dictionary use, then there were several "parties" involved—Oda Anderson, the Buckeye Company, the owner of the electric wire, the owner of the telephone wire, the defendant, Perry—and which of these constitute the two meant by "either" is left in doubt.

▆ We think no reversible error is shown to admitting in evidence the portions of the pleading alleging ownership by defendant of the auxiliary line connecting the Buckeye Company to the high line, in as much as the appellant had produced a witness whose testimony as to who paid for the building of it undoubtedly left the inference that it did not belong to appellant. It is unimportant, however, in as much as the appellant undisputably had control of same at the time of the accident.

The exception to the argument of appellee to the jury on the admissions in that pleading was taken to a long speech, most of which was undoubtedly proper. No rule of the trial court on any of it that may have been unfair was invoked.

In view of another trial it is not necessary to pass on the fairness of the amount of the verdict.

For the errors pointed out the judgment of the trial court is reversed and the cause is remanded.