## HAVENS et al. v. DALLAS POWER & LIGHT CO.

No. 14610.

Court of Civil Appeals of Texas.
Dallas.

March 13, 1953.

Rehearing Denied April 10, 1953.

Mullinax, Wells & Ball, W. D. Kimbrough, Carter & Gallagher and Joe Hill Jones, all of Dallas, for appellants.

Worsham, Forsythe & Riley and W. Autry Norton, all of Dallas, for appellee.

YOUNG, Justice.

Appellant Havens instituted this suit against Dallas Power & Light Company for recovery of damages. The occasion was this: While in course or erecting a sign on roof of the new Johnson Bros. Chevrolet warehouse, Industrial District, Dallas, a steel rod he was handling made contact with a high voltage line owned and maintained by appellee, with result of a violent electrical shock and serious personal injuries. National Automobile Casualty Insurance Company intervened to claim recoupment of $14,440.95 paid out in compensation benefits to Henry Havens; defendant in due course filing motion for summary judgment, alleging nonexistence of genuine issues concerning any material facts. Upon hearing and consideration of pleadings, depositions, affidavits, photographs, drawings, and stipulations relating to location of the building in question, sign upon which Havens was working, size and capacity of defendant's power lines located in the vicinity, the motion was sustained, with take nothing judgment in accordance; and timely appeal from such adverse rendition.

The locale of injury was on Payne Street, running generally east and west,

near its intersection with Industrial Boulevard, a street running north and south. The particular distribution line of defendant was installed in September 1947 on a series of telephone poles along the north side of Payne Street and within the dedicated portion thereof some seven feet south of the property line of lots adjacent to Payne Street at northwest corner of Payne and Industrial Boulevard, where Johnson Bros. later erected this warehouse. High-tension wires (13,000 volt potential), 32.5 ft. above the ground, were there mounted on top cross-arms of two poles 90 ft. apart.

According to affidavit of R. D. Meador, general contractor (plaintiff's Exhibit A), construction of Johnson Bros. warehouse was begun during March 1949 and completed in July; the only activity from July 10 to August 1st being the placing of lugs on steel trusses so that a sign could be installed. Plaintiff was working as a welder on the job throughout. The warehouse sat well back from and faced Industrial Boulevard; the sign running along roof at east wall; construction of the sign beginning August 1 and plaintiff sustaining injury on August 4, 1949.

The following dimensions were stipulated: *Vertical:* From base of sign on east side of warehouse to north high-tension wire, 14.5 ft.; height of sign on same side of building, 10.8 ft.; top of roof at highest point to northernmost wire, 8 ft.; top of sign at east side of warehouse to most northern wire, 4.4 ft.; from the ground to northernmost wire at southeast corner of building 32.5 ft.; southwest corner of building roof to most northerly wire, 18.5 ft. *Horizontal* distances: Center line of west pole to south edge of building, 7 ft.; center line of top of west pole to south end of building, 6.1 ft.; northernmost wire to southwest corner of building, 2.5 ft.; northernmost wire to south end of building, southeast corner, 3 ft.; northernmost wire to south end of the sign frame on east side of building, 3 ft.; distance from west pole to east pole, 90.3 ft. The situation with respect to defendant's equipment remained unchanged from 1947 to date except that on October 25, 1949 (after the injury) Johnson Bros. applied for service at the warehouse and a

connection was made off of the west pole, consisting of a three-wire drop.

We will here adopt appellant's narrative, explanatory of injuries, as recited in his brief: "In order to bring construction material up onto the roof where he was working, the plaintiff took a position on a horizontal cross member in the framework of the sign approximately five feet above the roof of the building. As he stood on this structural steel member, he reached down and brought a piece of structural steel approximately fifteen or twenty feet long up onto the roof from a co-worker on the ground. As he was bringing the rod up hand over hand, it made electrical contact with the high voltage line of the defendant. This line carried a large current of electricity, having an electrical potential between phases of approximately thirteen thousand volts and an electrical potential between the wire and the ground of seven thousand six hundred twenty volts. Instantaneous with this contact the plaintiff received a severe electrical shock. The current passed through both his hands and through his back, causing severe burns. He was hurled backward onto the roof of the warehouse on which he was working. After receiving these injuries, the plaintiff remained in the hospital for three months. His hospital bill was approximately Sixteen Hundred Dollars ($1600.00), and his bills for doctors' and nurses' services amounted to approximately Four Thousand Five Hundred Dollars ($4,500.00). It was necessary to amputate the thumb and first finger of plaintiff's left hand, and the remaining fingers on both hands are contracted like claws and have practically no motion."

Appellant asserts error in the trial court's grant of defendant's motion for summary judgment; in that, he says, (1) a fact question exists "as to whether or not the defendant had notice of the condition on the premises and the danger resulting therefrom by reason of the close proximity of the roof of the building to the high voltage wires of the defendant"; (2) "as to whether or not the defendant was guilty of negligence proximately causing the injuries of plaintiff"; and (3) "as to whether or not

the plaintiff was guilty of negligence proximately causing the injuries sustained by him."

The facts relied on in this connection as constituting notice to, defendant of actual conditions on the warehouse job and danger incident to adjacency of defendant's high voltage wires to building roof will be outlined briefly. The previous year (1948) defendant had established a salvage depot also on Payne Street but farther to the west from Industrial Boulevard. It was in charge of L. E. Eads, salvage supervisor and purchaser for the Light Company, with some five employees under his direction and control. It was their duty to pick up material at other points in Dallas and convey same to the salvage house, using either Payne or Levee Street in their trips; Eads, by deposition, stating that he had observed the Johnson Bros. warehouse under construction from time to time, seeing workmen there; that he had nothing to do with maintenance of defendant's distribution lines either as to keeping them up, salvaging, or tearing them down; neither was the duty of lookout for proper clearances of power lines any part of his business or of the employees under him. Leslie Burford, Superintendent of distribution for defendant, by deposition testified that he had no notice (other than happening of the accident) that the Johnson warehouse had been erected until they made request for electric service more than three months thereafter.

Art. 1436a, Vernon's Ann.Civ.St., regulating corporations dealing in electric energy, requires their lines to be constructed, operated, and maintained "as to clearances" in accordance with the National Electrical Safety Code and that same shall be at least 22 ft. "above the surface of the traffic lane." Such Code, paragraph 234, under heading "C. 4." "Conductors Passing by or over Buildings" (emphasis ours), involving wires of 8,700 to 15,000 voltage, calls for clearance of 8 ft. either horizontal or vertical.

The gravamen of charges by which liability is sought to be imposed on defendant relates to its notice of working conditions on the warehouse site at time of and prior to plaintiff's injury and a failure to insulate these high-tension wires in such connection. Here the following observations may be made on a basis of record facts which we do not regard as controverted: (1) Although defendant argues that notice to salvage superintendent Eads of matters outside the scope of his duties was not notice to his principal, we may assume for purpose of discussion that the Light Company had constructive knowledge of the Johnson Bros. warehouse erection begun some three months before August of 1949. But this relates merely to existence of the structure, its construction and design. It is not disputed that defendant's high voltage wires were 8 ft. higher than roof of the building at its highest point and 14.5 ft. higher than building at the place where plaintiff was injured (aside from being 3 ft. south of warehouse); a clearance which complied with the National Electrical Safety Code and thereby a situation from which defendant was not required to anticipate any dangerous consequences. Moreover, plaintiff's injury was not caused by a hazardous condition incident to construction and ultimate design of the building itself in so far as it had been apparent for some three months prior thereto. The situation of danger involving injury arose only with the erection of the sign on building roof, no part of which construction could have been seen by anyone more than three days before the accident. Appellants do not claim that defendant had actual notice of this further project or activity; nor, in our opinion, can any such contention be reasonably made.

Where the defect or dangerous condition causing the injury does not arise from the negligence of the Power Company, its liability turns on whether it knew, or by the exercise of reasonable diligence should have known of the situation in time to have avoided the injury. 29 C.J.S., Electricity, § 47, p. 596. Or, as stated by appellee, "The authorities clearly show that where an electric line has been constructed and maintained for some time prior to the accident, at a sufficient height to comply with statutory provisions, and at a location where it is not probable that a person will

692

contact it, and some change is made which creates a dangerous condition, the owner of the wire cannot be held liable in the absence of notice of such condition" (either actual or constructive).

The following Texas cases have made application of the foregoing principles to situations like unto that reflected here; sufficiently so, we think, as to be controlling. In West Texas Utilities Co. v. Dunlap, Tex.Civ.App., 175 S.W.2d 749, 752, an electric company had maintained for some ten years before the accident an uninsulated 13,000-volt line to a refinery; the latter discontinuing purchase of electricity in February 1941, though the power line was left charged with electricity. In June 1941 the refinery began construction of additional housing under said line with clearance of about 8 feet between roof of the housing and the line. Later, on July 1, a refinery employee was electrocuted when a piece of galvanized iron he was carrying on top of the construction came in contact with such high line. The trial court rendered judgment in plaintiff's favor, holding that the Power Company was negligent in failing to disconnect the line and in maintenance of same without insulation; finding in such connection that the building had been under construction about a month and defendant *should have known* of its existence, and further that defendant was negligent in *not discovering* the building operation. In reversing the trial court, it was held: "The question presented by the second point is: Was there any evidence to support the conclusion of fact that 'the failure of Appellant to insulate its high voltage line maintained over the Baird Refining Company property was a proximate cause of Earnest Dunlap's injuries and resulting death'. An essential element of a 'proximate cause' is the foreseeability of hazard to the injured party. The judgment, in so far as it rests upon any finding to the effect that failure to insulate was a proximate cause of the death, must be tested in recognition of the fact, found by the trial judge, as before noted, that appellant *was without knowledge of the erection* (had not discovered the erection) of the building under the power line. When so tested, it seems hardly arguable that there was any evidence tending to show that appellant should have reasonably foreseen that if it failed to insulate the wires in the particular place where the injury occurred such failure would constitute an unreasonable hazard to anyone. Absent any knowledge of the building operations, the appellant, having strung its line upon poles 27 or 28 ft. above the ground—5 or 6 ft. above the height indicated by statute as safe (R.S. 1925, Art. 1436) could not reasonably foresee any danger to the deceased as resulting from a failure to insulate. Brush Electric Light & Power Co. v. Lefevre, 93 Tex. 604, 57 S.W. 640, 49 L.R.A. 771, 77 Am.St.Rep. 898." (Emphasis ours.)

In Hill v. Dallas Railway & Terminal Co., Tex.Civ.App., 235 S.W.2d 522, 525, a recent decision by this Court, the deceased, a cable splicer for the Telephone Company, was killed when he came in contact with a high-tension line of defendant. The pole which Hill had been instructed to ascend was used jointly by the Power & Light Company and had been recently moved from a distance of 11 ft. to within 45 inches of defendant's line. We there held: "It appears without dispute that the pole had been recently moved by a third party to the location mentioned in the foregoing issues; in consequence of which we think appellee correctly asserts that liability, if any, on its part must be conditioned upon knowledge, either actual or constructive, of the change in position of said pole. * * * Be this as it may, the dangerous condition here, not being of its own creation, the duty of defendant Street Railway Company to insulate its wires against such a contingency did not arise until after actual knowledge of the shift in position of pole, or the lapse of such time as in the exercise of ordinary care the changed situation should have been discovered. 18 Am.Jur., Electricity, sec. 100, p. 496; 29 C.J.S., Electricity, § 47, p. 596; West Texas Utilities Co. v. Dunlap, Tex.Civ.App., 175 S.W. 2d 749; Mirnek v. West Penn Power Co., 279 Pa. 188, 123 A. 769; Reed v. Duquesne Light Co., 354 Pa. 325, 47 A.2d 136. * * * The duty of companies to insulate their wires is not absolute, extending to all parts

of the system; being limited on the other hand to places where people may be reasonably expected to resort for business or pleasure. 18 Am.Jur., sec. 97, pp. 491, 492; 29 C.J.S., Electricity, § 44, p. 591; Brush Electric Light & Power Co. v. Lefevre, 93 Tex. 604, 57 S.W. 640 [49 L.R.A. 771]; West Texas Utilities Co. v. Dunlap, supra."

Analysis of authorities cited by appellant[1] show distinguishing factors which render them inapplicable to the situation at hand.

■ Appellants claim that further fact issues are presented; for instance, in defendant's failure to furnish employees with copies of safety rules, to advise patrolmen as to proper clearance distances, and to reroute or barricade its lines. These contentions in turn failed to take into account the fact that the circumstances as alleged and described could not constitute negligence except as they occur in connection with a dangerous situation; and here, as we have already seen, actual knowledge by defendant of the project resulting in injury is not claimed.

■■ Appellee further argues correctness of the court's grant of summary judgment "because the undisputed facts show that plaintiff was guilty of negligence proximately causing his injuries." It is settled under Texas Rules of Civil Procedure, Rule 166–A, Summary Judgment, that all doubts concerning a genuine issue of fact must be resolved against the moving party. Penn v. Gorabed Gulbenkian, Tex.Civ.App., 243 S.W.2d 220, affirmed Tex.Sup., 252 S.W. 2d 929. Plaintiff in his testimony did not admit of any particular knowledge regarding the line with which he indirectly made contact, or with reference to whether same was insulated or not; in which state of the record we cannot say, at this juncture, that his conduct on the occasion of injury constituted negligence as a matter of law. "In order that an act shall be deemed negligent per se, it must have been done contrary to a statutory duty, or it must appear

so opposed to the dictates of common prudence that court can say, without hesitation or doubt, that no careful person would have committed it." Renfro Drug Co. v. Lewis, Tex.Civ.App., 235 S.W.2d 609, 611, syl. 20.

In applying the doctrine just quoted, and pertinent here, the Supreme Court in the earlier case of Texas & Pac. Ry. Co. v. Day, 145 Tex. 277, 197 S.W.2d 332, 333, went on to say: "It is obvious that had Day been more cautious, he would not have been injured. But whether the precautions he took amounted to due care was properly left to the jury."

In harmony with the conclusions heretofore reached, however, this cause is in all things affirmed.

---

1. These are East Texas Public Service Co. v. Johnson, Tex.Civ.App., 300 S.W. 975, affirmed Tex.Com.App., 6 S.W.2d 344; Carlock v. Westchester Lighting Co., 268 N.Y. 345, 197 N.E. 306; Braun v. Buffalo General Electric Co., 200 N.Y. 484, 94 N.E. 206, 34 L.R.A.,N.S., 1089.