**CENTRAL POWER AND LIGHT COMPANY, Appellant,**

v.

**Richard S. MARTINEZ, et al., Appellees.**

No. 13–90–326–CV.

Court of Appeals of Texas, Corpus Christi.

March 14, 1991.

Robert L. Galligan, Jones, Galligan, Key & Pena, Weslaco, for appellant.

Abel Toscano, Alberto Garcia, Harlingen, for appellees.

Before NYE, C.J., and BENAVIDES and HINOJOSA, JJ.

## OPINION

NYE, Chief Justice.

Central Power and Light Company (CP & L) appeals the judgment from a bench trial finding it negligent for failing to properly maintain and inspect its light poles for possible damage and dangerous conditions. The court awarded damages to the appellees. CP & L asserts two points of error. We reverse and render judgment.

Christina Martinez, her son, and Bessie Aragon, Christina's mother, were travelling west at an approximate speed of thirty-five miles per hour on Highway 77. Christina was driving the car. Without warning, an aluminum light pole located in the median of this divided highway fell across the road and in front of the car. Christina swerved to avoid the pole and her car hit the curb. She and Aragon sustained neck and back injuries as a result of the mishap. Christina, Richard Martinez, her husband, and Aragon filed suit against CP & L alleging negligent maintenance and inspection of the light pole.

The trial court entered the following pertinent findings of fact. On or about July 1, 1987, CP & L's light pole fell in the path of Christina's vehicle. In 1968, the light pole was installed on heavily-travelled Highway 77. The pole had safety features, more particularly, a break-away base to minimize human injury should a vehicle hit the pole. There had been accidents with other poles in the same area. CP & L did not have a scheduled program of pole inspection and maintenance, nor did it direct employees to inspect the poles; rather, the poles were inspected "as necessary" and "on sight." CP & L would have checked the pole in question were something wrong noticed. CP & L expects the public to play an active role in discovering "unreasonable" pole conditions and advising police departments of those conditions. The light pole in question was sideswiped by another vehicle be-

fore this accident. One witness testified the pole was damaged two or three days before it fell, while another said the damage occurred the night before. The pole had an indentation from the sideswipe and its lamp was dangling two to three feet from its mooring. The pole, with all of its problems, was "obvious to people." Neither party presented expert testimony regarding what caused the pole's fall; however, it was "obvious" that the pole fell from the indentation created by the previous vehicle which sideswiped the pole.

The court entered the following pertinent conclusions of law. CP & L was negligent in failing to properly maintain and inspect its light poles for possible damage and dangerous conditions. CP & L's negligence proximately caused appellees' injuries. The appellees did not contribute to the damage of the light pole and were not negligent in failing to avoid the resulting damages.

■ By its first point, CP & L asserts that the evidence is legally and factually insufficient to support findings of fact and conclusions of law that it was negligent in maintaining and inspecting the light pole and that such negligence proximately caused appellees' injuries.

In considering a "no evidence", "insufficient evidence", or an "against the great weight and preponderance of the evidence" point of error, we will follow the well-established tests set forth in *Pool v. Ford Motor, Co.*, 715 S.W.2d 629 (Tex.1986); *Dyson v. Olin Corp.*, 692 S.W.2d 456 (Tex.1985); *Glover v. Texas Gen. Indem. Co.*, 619 S.W.2d 400 (Tex.1981); *Garza v. Alviar*, 395 S.W.2d 821 (Tex.1965); *Allied Fin. Co. v. Garza*, 626 S.W.2d 120 (Tex.App.—Corpus Christi 1981, writ ref'd n.r.e.); and Calvert, *No Evidence and Insufficient Evidence Points of Error*, 38 Tex.L.Rev. 361 (1960). The trial court's findings of fact and conclusions of law should be reviewed in the same manner as jury findings upon special issues and will not be disturbed on appeal unless the evidence is factually in-

sufficient to sustain a specific finding or the findings are so contrary to the overwhelming weight of the evidence that it is manifestly wrong. *Ybarra v. Newton*, 714 S.W.2d 353, 355 (Tex.App.—Corpus Christi 1986, no writ). The controlling question is whether CP & L had actual or constructive notice of the defective or damaged pole or, to phrase it differently, did CP & L know or should it have known of the defective or damaged pole in time to have corrected the problem and prevented appellees' injuries.

It is undisputed that, before the incident in question, an unknown automobile had sideswiped the light pole, although no one saw the previous accident. As a safety precaution, the pole was designed to break away from its moorings should an automobile collide with it. This pole did not. At trial, appellees suggested that the sideswipe was sufficient to loosen the pole from its moorings yet without sufficient force to topple it at that time. They produced evidence showing the broken moorings and a dent in the pole, allegedly caused by the sideswipe.

Officer Juan Suarez of the San Benito Police Department investigated the Martinez accident. He testified that there was no evidence that Christina Martinez struck the pole. In his official report, he stated that the light pole was struck in an accident the night before it fell. Suarez obtained this information from another officer as they changed shifts. The other officer did not identify to Officer Suarez which specific pole was struck and repeated attempts to verify that assertion were unsuccessful. There is no evidence that the other officer reported the sideswipe to CP & L for inspection and possible repair.

Hector Martinez, owner of a car lot situated across the road from where the light pole stood, testified that he saw the lamp portion broken and hanging from the pole in question at least one to three days before the accident. He did not inform CP & L or any other authorities about the condition of the pole.

CP & L business operations manager Robert Hurley testified that CP & L re-

ceived no notice of the pole's damage until after it fell in front of appellees' car. This particular pole was installed in 1968, and was the type of aluminum pole required by law to be installed to protect the motoring public. Hurley identified two accident reports where two automobiles collided with similar poles near the one in question. These collisions occurred four and two months before appellees were injured.

Regarding street lamp maintenance and repair, Hurley testified that CP & L follows the rules of the National Electric Safety Code. These rules state that "lines and equipment shall be inspected at such intervals as experience has shown to be necessary." He stated that although these rules set the industry standard, they are not law. Thus, street lamps were inspected "as experience requires." CP & L normally depends upon the public and police department to inform it of any equipment needing repairs. CP & L also requests that, whenever possible, its workers look for damaged or defective equipment. In his thirty-two years' employment with CP & L, Hurley had never experienced a breakaway light pole falling without being directly caused by an automobile collision. He stated that had anyone reported the sideswipe to CP & L, it would have inspected the pole.

CP & L transmission and distribution standards engineer and former CP & L design engineer, Eliazar Perez, testified that he examined the fallen pole. He could not tell what caused the pole to fall but concluded that it did not receive a direct hit, rather, it was sideswiped. He noted that the sideswipe may not have caused the pole to fall but that it was possible that the hit cracked the pole's base and another force caused the fall. Perez could not determine the time interval between the sideswipe and the fall.

■ An electric company is required to exercise the diligence of an ordinarily prudent person when discharging its duty to inspect its poles and wires. *See San Anto-*

*nio Gas & Elec. Co. v. Ocon,* 105 Tex. 139, 146 S.W. 162, 164–65 (1957); *Jacksonville Ice & Elec. Co. v. Moses,* 134 S.W. 379, 382 (Tex.Civ.App.—1911, writ ref'd). This rule applies to the maintenance and repair of non-current-supplying equipment such as highway-lights or street-lights and their support poles.

In *Ocon,* a third party installed an electric wire across a street and the electric company agreed to gratuitously supply electric current through that wire for lighting a civic celebration. The decedent was killed when the umbrella of his wagon caught upon the then-dead wire, wrenching the wagon seat and decedent to the ground. The Texas Supreme Court reasoned that in the absence of actual knowledge that it was improperly or defectively strung, the electric company could presume that those in charge of stringing the wire and for whose benefit it was strung, would perform the work in a proper manner and in compliance with city ordinances. The court distinguished this case from those cases where persons were injured from a company's distribution of electric currents, because "electricity is a silent, deadly, and instantaneous force, and one who uses it for profit is bound to exercise care corresponding to the dangers incident to its use." The electric company was held not liable for the wrongful death when it was under no duty, either to the public or the decedent, to see that the wire was properly strung.

Similarly, in *Havens v. Dallas Power & Light Co.,* 256 S.W.2d 689, 691 (Tex.Civ. App.—Dallas 1953, writ ref'd n.r.e.), during the erection of an electric sign above a newly constructed warehouse, the sign erector's tools contacted the power line suspended above it, causing the erector serious injuries. The electric company's pre-existing power line was installed at the prescribed clearance above the warehouse. The court held that, although the electric company had constructive knowledge of the warehouse construction, it could not be held liable for the sign erector's injuries

absent notice that the sign was being erected. The court stated that, where the defect or dangerous condition causing the injury does not arise from the negligence of the power company, its liability turns upon whether it knew, or by the exercise of reasonable diligence should have known of the situation in time to have avoided the injury. *Havens,* 256 S.W.2d at 691–92; *cf., West Texas Util. Co. v. Dunlap,* 175 S.W.2d 749, 752 (Tex.Civ.App.—Eastland 1943, writ ref'd w.o.m.) (action for death of refining company's employee who sustained electric shock while working atop building under construction beneath electric company's power line; where electric company had no notice of the building's construction, evidence was insufficient to support finding that the electric company's failure to insulate the line proximately caused the worker's death.); *Hill v. Dallas Ry. & Terminal Co.,* 235 S.W.2d 522, 525 (Tex.Civ.App.—Dallas 1950, writ ref'd n.r.e.) (third party moves electrical pole from a distance of about 11 feet to within some 45 inches of a non-insulated 600–volt feeder line for carrier's Street Railway; employee of third party instructed to climb pole and perform repair killed when tools contacted the feeder line; held that in absence of showing of actual or constructive knowledge that railway company knew that pole upon which decedent was working had been moved closer to the railway pole, railway company not liable for death.)

In the present case, it is undisputed that CP & L did not cause the sideswipe damage to the pole. We note that there was no evidence that the pole was in a damaged condition before the sideswipe occurred. As in *Ocon* and *Havens,* a third party altered the position of the utility's service in relation to the injured party. Without some constructive or actual notice of that alteration, such as the improper cable height in *Ocon* or the installation of the sign in *Havens* or previous pole damage due to a sideswipe in the present case, the utility company did not proximately cause the injuries sustained.

Our examination of the entire record indicates that there is no evidence that CP &

L had any actual or constructive evidence of the damaged pole prior to appellees' injuries. The trial court made no such findings. The point of error is sustained. Discussion of the remaining point of error is unnecessary.

The trial court's judgment is RE-VERSED and judgment is hereby REN-DERED that appellees take nothing.