ALFIO NEGLIA, Respondent, Appellant, *v.* KEBA CHADOROW, Appellant, Impleaded with CONSOLIDATED GAS COMPANY OF NEW YORK, Sued Herein as "CONSOLIDATED GAS Co.," Respondent.

JOSEPH NEGLIA, an Infant, by ALFIO NEGLIA, His Guardian ad Litem, Respondent, Appellant, *v.* KEBA CHADOROW, Appellant, Impleaded with CONSOLIDATED GAS COMPANY OF NEW YORK, Sued Herein as "CONSOLIDATED GAS Co.," Respondent.

ANTOINETTE DE CARO, Respondent, Appellant, *v.* KEBA CHADOROW, Appellant, Impleaded with CONSOLIDATED GAS COMPANY OF NEW YORK, Sued Herein as "CONSOLIDATED GAS Co.," Respondent.

LORENZO DE CARO, Respondent, Appellant, *v.* KEBA CHADOROW, Appellant, Impleaded with CONSOLIDATED GAS COMPANY OF NEW YORK, Sued Herein as "CONSOLIDATED GAS Co.," Respondent.

PAUL DE CARO, an Infant, by LORENZO DE CARO, His Guardian ad Litem, Respondent, Appellant, *v.* KEBA CHADOROW, Appellant, Impleaded with CONSOLIDATED GAS COMPANY OF NEW YORK, Sued Herein as "CONSOLIDATED GAS Co.," Respondent.

First Department, November 1, 1929.

*Anthony Romano*, for the plaintiffs.

*Harold M. Phillips*, for the defendant Chadorow.

*Chauncey B. Garver* of counsel [*Shearman & Sterling*, attorneys], for the defendant gas company.

O'MALLEY, J.   These five actions, which were tried together, grew out of a gas explosion which occurred in a three-room apartment on the fourth floor of premises 234 Eldridge street, borough of Manhattan, on October 3, 1925.   The negligence of the defendant Chadorow, the owner, is predicated upon the theory that he negligently failed to repair certain gas pipes within the apartment, and the negligence of the defendant gas company, upon the theory that it was negligent in turning on the gas in the apartment when the pipes were out of repair and in a dangerous condition.

The plaintiff Lorenzo De Caro took a lease of the apartment in question on September 27, 1925, by paying a deposit to the janitress.   He was to be given occupancy within a few days, and although he was improperly prevented from proving that the janitress promised to have the repairs at once made, such obligation on the part of the defendant owner was fairly to be implied. Painting was required and floors were to be fixed.   In addition there were no gas fixtures in any of the three rooms and no caps on the pipes that extended from the ceiling.   In other words, there was nothing to prevent the free flow of gas into the apartment, once the meter was turned on.

On the day after he paid the deposit, De Caro went to the office of the defendant gas company and requested that the gas be turned on in the apartment which he had rented and at the same time requested that it be turned off in the apartment then occupied by him, No. 216 Eldridge street.   There was evidence to show that his instructions were noted in writing by an employee of the defendant gas company.   De Caro testified that before leaving the latter place the gas was in fact turned off.

On Friday evening, October second, De Caro secured the key from the janitress of the defendant Chadorow, and moved in the following morning.   At this time only the painting had been done.   The floors and gas pipes were in the condition already described.   Upon complaining to the defendant Chadorow in person about the condition of the gas pipes, the latter informed De Caro that he could not have the pipes repaired on that day, which was a Saturday, but would have them attended to on the following Monday.   De Caro after locking the apartment left the premises and was absent for about three hours.

He returned at five o'clock in the afternoon and after unlocking the door lighted a match for the purpose of affording himself temporary light.   Immediately the explosion followed.   Injuries to himself, his wife and to the infant De Caro resulted.   In addition, the infant Neglia who was playing on the sidewalk, was injured by falling glass which was blown from the front windows of the apartment by force of the explosion.

All complaints as against the defendant gas company were dismissed at the close of the plaintiffs' case upon the ground that there was insufficient evidence to establish responsibility on the part of such defendant. In our view this ruling was erroneous. At the outset it is to be noted that the trial justice improperly prevented proof that the gas meter, which was owned and controlled by the defendant gas company, was found turned on immediately after the accident. The plaintiffs were clearly entitled to establish this fact as a link in the chain of evidence. Especially is this so, since it appeared that when De Caro left the apartment after having moved in the gas meter was closed. Whether it was turned on by a representative of the gas company between the time De Caro left and locked the apartment and his return, was a fact to be established by other and additional proof.

The meter was located in the hall just outside the door leading to the apartment. It had been closed by the defendant gas company in the previous August, apparently after a former tenant had vacated the apartment. This was done by means of a key at all times in the possession of the defendant gas company.

It is urged on behalf of said defendant that notwithstanding it had possession of the key, the meter may have been turned on by other means and by the act of someone not in its employ. However this may be, it was a question for the jury to determine. It will be recalled that the gas in the apartment formerly occupied by the plaintiff De Caro was turned off pursuant to a request made when he applied for gas to be supplied to the apartment in question. In addition, the plaintiffs showed that shortly before four o'clock on the afternoon in question a man with a plate on his cap came to the premises and made inquiries for De Caro's apartment. He was afterwards seen to proceed from the hallway on the ground floor up the stairs and to return and leave the premises shortly thereafter.

If the defendant gas company was responsible for turning on the meter without first ascertaining whether the pipes of the apartment in question were in a proper and safe condition, it would be guilty of negligence. Especially is this true since it appears that one of its own rules required its employees before turning on a meter to make such investigation.

In this connection it is worthy to note that after the complaints had been dismissed as against the defendant gas company, the defendant Chadorow called one of its employees who testified in substance that on the evening of October second he saw the tenant De Caro at the apartment and refused to turn on the gas for the reason that no deposit had been paid in to the gas company. In

corroboration of this testimony there is an exhibit marked for identification which bears a notation on the reverse side as follows: " M. Unlocked Oct. 3, 1925." It is the claim of the plaintiffs' counsel that this notation escaped his attention on the trial and that it should prove of strong probative force in their favor upon another trial. Such writing may become competent evidence in plaintiffs' behalf against the defendant gas company, at least, under the provisions of section 374-a of the Civil Practice Act (as added by Laws of 1928, chap. 532).

The defendant, appellant, Chadorow urges that the record is devoid of evidence tending to show that the explosion was caused by gas which escaped from pipes within the apartment; that there was no proof that the gas meter was open when the explosion occurred, and nothing to show that any gas ever escaped from pipes within the apartment. The evidence, it is claimed, merely shows that there was a gas explosion.

While there is some merit in this contention, we have already had occasion to point out that proof to connect each of the defendants with the explosion was excluded. The plaintiffs offered to show that the meter was in fact found turned on immediately after the explosion. With this fact established, we are of opinion that the jury might well have found that the meter which had a direct connection with the apartment pipes was the source of the exploding gas. In this view we think that the ends of justice require the granting of a new trial in all the actions, because of lack of proof occasioned by the erroneous exclusion of evidence.

It follows that the judgment dismissing the complaints as to the defendant gas company should be reversed and a new trial ordered as to all of the plaintiffs, with costs to the appellants to abide the event; that the judgments in favor of the plaintiffs Neglia against Chadorow be set aside and a new trial ordered, with costs to appellant to abide the event; and that the orders setting aside the verdicts in favor of the defendant Chadorow as against the plaintiffs De Caro be affirmed, with costs to said plaintiffs.

Dowling, P. J., Finch, McAvoy and Martin, JJ., concur.

In first two actions: On each appeal judgment reversed and a new trial ordered, with costs to the appellant to abide the event.

In last three actions: On each appeal by plaintiff judgment reversed and a new trial ordered, with costs to the appellant to abide the event. On each appeal by defendant Chadorow, order affirmed, with costs and disbursements.