# 𝔚𝔶𝔱𝔥𝔢𝔟𝔦𝔩𝔩𝔢

## LYNCHBURG GAS COMPANY v. JAMES E. SALE, ADMINISTRATOR OF TIPTON G. SALE.

June 15, 1933.

Present, Campbell, C. J., and Holt, Epes, Hudgins, Gregory and Chinn, JJ.

The opinion states the case.

*Barksdale & Abbot* and *J. Wallace Ould,* for the plaintiff in error.

*B. B. Campbell* and *Edward Meeks,* for the defendant in error.

CAMPBELL, C. J., delivered the opinion of the court.

James E. Sale, as administrator of Tipton G. Sale, brought this action by notice of motion, and recovered a judgment

against the Lynchburg Gas Company, a corporation, for the sum of $7,500, as damages for the death of plaintiff's intestate, caused, it is alleged, by the negligence of the defendant.

The defendant is a Virginia corporation engaged in the manufacture, sale and distribution of gas for domestic purposes in the city of Lynchburg.

The deceased occupied a room in a residence known as 1602 Floyd street, which was owned by O. P. Morris and leased to F. O. Doss and wife, who in turn subleased apartments to tenants. Sale, on the night of December 12, 1931, went to his room about nine o'clock. On the following day he was found lifeless, and gas was issuing from an uncapped pipe which extended into the room.

The record discloses that the house in which Sale was asphyxiated consisted of eight rooms, the entire building being a combination store and dwelling house. Doss and family occupied the first floor; on the second floor two rooms had been rented to W. F. Hamilton and wife. Two other front rooms were occupied by a Mrs. Trent, and Sale occupied a rear room. No gas had been used in the building for several years, and there is no evidence tending to show that Sale knew that gas was to be introduced into the house.

The piping for this house entered the basement from the gas main in the street, through a service pipe which came through the floor in the Doss kitchen and extended up the wall of the kitchen into the Hamilton apartment, thence along the wall of the Hamilton kitchen through the side wall thereof, across a hallway and bathroom and into the room of Sale, extending two or three inches from the wall, and at the time of the death of Sale was uncapped. It is clear from the evidence that the entire piping system from the Doss kitchen was exposed to even a casual view.

Hamilton, on the 11th of December, made application to the company for gas, informing the company that he was installing a stove, and later requested that some one be sent to make the proper installation. An employee of the com-

pany suggested to Hamilton that he call a plumber residing in the neighborhood to install the stove.

Pursuant to Hamilton's request for gas, one Gilchrist, the defendant's employee, whose duty it was to install meters, went to the house for the purpose of installing a meter. Hamilton was absent at the time and Mrs. Doss informed Gilchrist that he would have to place the meter upstairs, as she was afraid of gas, on account of her small boy. Gilchrist insisted that the meter be installed in the Doss kitchen, and she finally acquiesced. No examination of the piping was made by Gilchrist and no inquiry was made as to the present occupants of the house, though he in fact knew that tenants had formerly occupied the upstairs rooms. It is further shown that he found the pipe disconnected in the Doss kitchen, with both ends loose, and that he adjusted the same.

Though denied by Gilchrist, Mrs. Doss testified that after placing the meter, Gilchrist turned on the gas and left it flowing through the meter. Some time after the installation of the meter, Hamilton secured one Driscoll to install the stove. He, without any examination, turned on the gas.

L. C. Wofford, manager of the company, testified that sales of stoves were often brought about by the activities of the various plumbers; that there were approximately twenty-eight plumbers, or "so-called plumbers," in the city; that they were permitted by the company, after the installation of meters, to turn on the gas, upon the supposition that they were competent plumbers; that no specific instructions had ever been given the plumbers in regard to examination of pipes; and that the company relied upon the custom then prevailing in the city in regard to the connection and turning on of gas for consumption.

The record further discloses that the defendant was aware of the existence of uncapped pipes in houses of the type of the Doss house; that stoves were disconnected by "Tom, Dick and Harry and the furniture-moving man;" that the pipes were frequently left uncapped; and that it was a

dangerous thing to turn on the gas under such conditions without inspection.

Though the alleged custom is relied upon to defeat a recovery, it appears that "any kind of plumber" was permitted by the defendant to make piping connections and to turn on the gas.

Able and exhaustive briefs have been filed by counsel, citing cases from other jurisdictions. We deem it unnecessary to distinguish the cases cited, as the case at bar is one of first impression and must be decided upon its own peculiar facts.

The lower court, on motion of the plaintiff, struck out the evidence of defendant relating to the custom obtaining in the city of Lynchburg. The reason was that no custom could excuse the defendant, under the facts stated, from not having made an inspection when it permitted the gas to be introduced under the circumstances set forth. No error was committed by the court in striking out the evidence. A custom so fraught with danger was of itself sufficient to have put the defendant upon notice and cast upon it at least the observance of ordinary care. "A custom shown to be a negligent custom is not admissible to show due care."

While the defendant was not an insurer of the safety of Sale, and the law does not impose upon it the arduous duty of inspection in every case, yet when its agent has good cause to believe that an inspection should be made, it is gross negligence not to inspect, and it is liable for damages proximately caused by such neglect.

In 28 C. J. page 595, it is said: "To render the company liable in such cases there must be facts alleged to show notice of defects, or facts from which an inference of duty to inspect arises, either from contract, custom, or franchise. A distinction has been drawn in this respect between the duty owed to an applicant for gas, and the duty, when supplying gas to an applicant, to protect other tenants in the same building who have not applied for it. With respect

to such tenants, it has been held that the company must use reasonable precautions to ascertain that the pipes in the building are in such condition that gas will not flow into their apartments to their injury; and in such a case the company cannot deny its liability on the ground that it had no right to enter upon the premises of the parties not applying for gas for the purpose of making an inspection of the pipes therein."

In *Hayes* v. *Cohoes Gaslight Co.*, 183 App. Div. 182, 170 N. Y. S. 312, 313, the court cited with approval the case of *Schmeer* v. *Gaslight Company of Syracuse*, 147 N. Y. 529, 42 N. E. 202, 30 L. R. A. 653, and said:

"The case of *Schmeer* v. *Gaslight Company of Syracuse*, 147 N. Y. 529, 42 N. E. 202, 30 L. R. A. 653, is so analogous to this case in its material facts as to make extended discussion unnecessary. There, as here, the defendant supplied a meter, which was installed and connected by the owner of the premises, and it was held that the conduct of the defendant in admitting the gas into the house without an inspection of the piping presented a question for the consideration of a jury as to the defendant's liability to third parties. It is now urged that Shear could not delegate to the owner of the building, or its employe, authority to install the meter. Whether he could or not is immaterial. The meter was properly installed, and it is of no consequence who did the work. The negligence of the defendant consists in permitting a dangerous substance to enter the house after the meter was installed, without taking proper precautions to protect third parties. The ground of negligence was stated in the *Schmeer Case,* as follows: 'Whether the company had failed to use such reasonable precautions as might properly be exacted of it before turning on the gas, or permitting it to be turned on by some third person.'

"The case is as if Shear had himself installed and connected the meter, and the defendant had thereafter neglected to inspect the service pipes throughout the house. No

one claims to have made such inspection. No one claims that Shear delegated that duty, or attempted to do so, to any person. The negligence consists, not in an act of commission by an unauthorized person, but in an act of omission by the defendant itself."

We are firmly of opinion that in the case at bar the facts and circumstances brought home to the defendant's agent, at the time of the installation of the meter, were sufficient to put the agent upon notice that the piping was defective, and it was his duty, before gas was turned on, to personally inspect it. This duty could not be delegated to a plumber, especially to one who had never received any instructions as to the proper manner of making inspection.

A number of other errors are assigned to the action of the court in giving and refusing instructions. We deem it unnecessary to discuss the assignments, for the reason that the jury, under proper instructions, have found the defendant guilty of negligence based, as we conceive it, upon clear and convincing evidence.

The judgment complained of should be affirmed.

*Affirmed.*

EPES, J., concurs in results.