## LONE STAR GAS CO. v. BRADFORD.

### No. 14159.

Court of Civil Appeals of Texas.
Fort Worth.

Jan. 10, 1941.

Rehearing Denied Feb. 14, 1941.

Walker, Smith & Shannon, of Fort Worth, and Thompson, Knight, Harris, Wright & Weisberg and Adair Rembert, all of Dallas, for appellant.

Julien C. Hyer and A. W. Christian, both of Fort Worth, for appellee.

SPEER, Justice.

This is an appeal by Lone Star Gas Company, hereinafter called appellant, from an adverse judgment in a suit instituted by appellee, Ben Bradford, who claimed to have sustained injuries resulting from carbon monoxide because of the negligence of appellant.

It is only necessary to refer to those parts of appellee's pleadings which are involved in the points relied upon by appellant for reversal of the judgment entered.

On and prior to November 20, 1935, appellee was a user of natural gas and a patron of appellant, a utility company supplying natural gas to the inhabitants of the City of Fort Worth. Appellant was furnishing to its customers a type of gas designated by the parties as "Joshua" gas; that name was applied because it received a certain treatment at Joshua, where there was mixed into it 19 to 20 per cent nitrogen and other inert substances, before passing into the distribution lines for delivery to its customers. On the date last above mentioned, appellee procured the services of an employee of appellant to adjust his stoves for the proper use of that type of gas.

Allegations were made that in July or August of 1936, appellant changed the supply from Joshua gas to what is termed "Shamrock" gas; the latter is described as being undiluted and a heavier quality than that previously furnished; that a different pressure was used by appellant in the use of Shamrock gas and that equipment adjusted for use of Joshua gas was not suitable for use of the other kind; that the difference resulted in the accumulation of an excessive amount of carbon monoxide when using Shamrock gas with equipment adjusted for use of the Joshua quality. It is alleged that appellant failed to apprise appellee of the changes made by it and that, having continued the use of his stoves in the manner they had been adjusted, he inhaled the poisonous substance until his blood was so inocculated with it that he sustained serious injuries resulting in the damages prayed for. That the failure of appellant to readjust appellee's stoves for a proper use of the new gas at the pressure furnished and to advise appellee of the changes made in the type of gas furnished are charged to be negligence and a proximate cause of the injuries sustained.

Appellant's answer consisted of a general demurrer and general denial.

At the conclusion of taking testimony, appellant presented its motion for an instructed verdict; this was denied by the trial court and its refusal is the sole error complained of in this appeal.

Having declined to sustain appellant's motion for a directed verdict, the court submitted the case to a jury on special issues. The material part of the verdict is: (1) a representative of appellant adjusted appellee's stoves on November 20, 1935; (2) in July or August, 1936, appellant increased the natural gas content of the gas furnished to appellee; (3 and 8) between September 1, 1936, and March 24, 1938, carbon monoxide in harmful quantities was produced from gas burned in appellee's heating and cooking stoves; (20) appellant was negligent in not warning appellee that it had increased the natural gas content of the gas it was furnishing; and (21) such negligence was a proximate cause of the injuries sustained by appellee. Upon this verdict judgment was entered in favor of appellee for the amount found by the jury under another inquiry, not referred to above.

Appellant does not contend that its representative did not adjust appellee's stoves in November, 1935, nor that it did not change from the Joshua to the Shamrock gas in July or August, 1936, nor that it did not readjust appellee's stoves when the change in the gas was made or any time thereafter; nor does it claim that any information was conveyed to appellee that a change would be or had been made from one kind of gas to the other. In such circumstances it is sufficient for us to say that the testimony offered by appellee was sufficient to establish these facts.

Appellant contends that there was no evidence tending to show, (a) that the ad-

justment of the stoves for use of Joshua gas was not suitable for the use of Shamrock gas; (b) that there was no competent testimony offered to show that when the equipment was adjusted for the use of Joshua gas, the change to Shamrock gas would produce more carbon monoxide; (c) that there was no testimony from which it could be found that the adjustment of appellee's stoves was the same when they produced carbon monoxide as they were when its employee adjusted them; and (d) that there was no testimony of probative value offered tending to establish that the negligence found by the jury was a proximate cause of the injuries alleged to have been sustained by appellee. Based upon these points, appellant asserts that its motion for a directed verdict should have been sustained.

We cannot agree to the contention made by appellant on the points mentioned. There is some testimony in the record which indicates that an appliance may be so adjusted that it will safely burn either of the two qualities of gas furnished, but it does not appear that any effort was made by appellant's employee to make such an adjustment, nor that appellee attempted to have it done. It is reasonable to assume that appellee wanted a suitable adjustment made for use of the gas then being furnished by appellant; nor can we say that appellant knew at the time it made the adjustments that it would change to another kind of gas. Mr. Jones, gas supervisor for the City of Fort Worth, testified to having examined the appliances in appellee's home in March, 1938, and found two of the stoves emitting harmful quantities of carbon monoxide, and advised that the stoves be not used until adjusted. He qualified as an expert and testified to the quality of each of the two gases used. He said there is a perceptible difference in the adjustment of an appliance for use of the Joshua and the Shamrock gas; that an adjustment suitable for one is not suitable for the other; the use of the two gases is not interchangeable with the same adjustment of appliances; when adjusted for the use of either, if a change is made in the gas, the appliances should be readjusted. This witness further testified that at the time he inspected the appliances they were emitting harmful quantities of carbon monoxide. Both appellee and his wife testified that the stoves had been in the home at all times since the adjustment by appellant's employee until the day inspection was made by Mr. Jones,

and that neither of them had made any changes in the adjustment, nor had any other person, within their knowledge, done so. That the appellant did not notify appellee that it was making the change of gas from one quality to the other, nor at any subsequent time. Appellee was stricken with a heart attack in November, 1937, and upon advice of a physiican had a cardiagram made of the heart region; appellee was put to bed, where he remained several weeks, under treatment. The doctor said he responded to the treatment slowly; that the cardiagram indicated clearly that he had a blocking of an artery in the heart muscle. Appellee was unable to get out and attend to his business or, as the doctor puts it, get on his feet after his attack, and in March, 1938, when it was discovered that his stoves were emitting carbon monoxide, a laboratory test was made of the blood of both appellee and his wife. It was found that in the wife's blood there was 10 per cent saturation of carbon monoxide in the red cells, and a 15 per cent saturation in those of appellee. The physicians testified that this condition was harmful and was conducive to the condition found by them in appellee's heart region.

■■ As above indicated, there is testimony in the record which conflicts with many of the material matters disclosed by the evidence referred to by us. But in view of the fact that the jury has had a chance to weigh the testimony and has determined it favorable to appellee, we are not at liberty to revise their verdict, when, as in this case, there is any evidence of probative value to support it. It follows that if, as here, issues of fact are presented, the trial court should not direct a verdict.

■ In Burroughs et al. v. Smith, Tex. Civ.App., 294 S.W. 948, writ refused, it was held that on a motion for a directed verdict, the evidence of the opposite party is taken as true and given most favorable construction and benefit of all reasonable inferences; other evidence being disregarded. Consideration of the weight of the evidence is within the province of the jury and not the trial court. See also City of Houston v. Chapman, 132 Tex. 443, 123 S. W.2d 652.

■ It is the general rule that if there is such evidence as would cause reasonable men to draw different conclusions, the case should be submitted to the jury. 41 Tex. Jur., pp. 938, 939, sects. 167, 168, 169 and 170.

In other words, if there is evidence of probative value, which would support a verdict contrary to one.requested to be directed, no such directed verdict should be had. If, when submitted to the jury and answered, it is said that, "if discarding all adverse evidence, and giving credit to all evidence that is favorable to the successful party and indulging every legitimate conclusion that is favorable to him, a jury might have found in his favor, then it is to be concluded that there is evidence to support the verdict." 17 Tex.Jur., p. 910, sect. 410. The authorities there cited have been followed many times and it seems to be the settled rule in this State. Upon the evidence in this case, some of which we have related above, the jury resolved the facts against appellant's contention. The evidence being sufficient to support an adverse verdict, it would have been improper for the trial court to direct one in appellant's favor.

Under the facts of this case, when appellant changed from the use of the lighter diluted to the heavier gas, it was in duty bound to apprise its patrons of the intended change, and use every reasonable precaution to see that persons whom it must have known had their appliances adjusted for use of the Joshua gas, had an opportunity to readjust their appliances in a suitable manner for use of Shamrock gas.

In Lane v. Community Natural Gas Co., 133 Tex. 128, 123 S.W.2d 639, our Supreme Court had under consideration a similar situation to the instant one. At page 642 of 123 S.W.2d the court observed: "Within the last few years gas, like electricity, has been commonly used for many purposes. That it is a powerful and dangerous force, has certain well-known characteristics, and requires care on the part of those who furnish it, is unquestioned." The court quotes from language previously used in the case of San Antonio Gas & Electric Co. v. Ocon, 105 Tex. 139, 146 S.W. 162, at page 164, 39 L.R.A.,N.S., 1046, where it was said: " 'Electricity is a silent, deadly, and instantaneous force; and one who uses it for profit is bound to exercise care corresponding to the dangers incident to its use.' Rowe v. Electric Co., 213 Ill. 318, 72 N.E. 711; McLaughlin v. Louisville Electric Light Co., 100 Ky. 173, 37 S.W. 851 [18 Ky.Law. Rep. 693], 34 L.R.A. 812; Cooley on Torts, 1492." Other jurisdictions adhere to the same principle as that above announced, more especially as expressed in Ray v. Pacific Gas & Elec. Co., 3 Cal.App.2d 329, 39 P.2d 812.

In one of the reasons assigned by appellant why its motion for a directed verdict should have been sustained, it is urged that there was no evidence tending to show a causal connection between its failure to notify appellee of the change in the quality of gas furnished and the injuries alleged and claimed to have been sustained; that is to say, the appellee did not establish by a preponderance of the evidence that the failure to so notify him of the change was a proximate cause of his injuries. In the nature of things, in such cases as this, it would be very difficult, if not impossible, to prove by direct evidence that it was a proximate cause; but such matters are usually shown by the surrounding circumstances disclosed by all of the testimony. It is undeniably true that appellant's employee adjusted the appliances for consumption of the Joshua gas; that thereafter appellant made the change to the Shamrock gas, without apprising appellee of its intention to do so; that within a few months appellee had the heart attack; that he did not respond readily to treatment and that shortly thereafter the appliances were emitting carbon monoxide in harmful quantities; that an analysis disclosed the contamination of his blood stream to such an extent as the physicians believed was producing, or at least contributing to, his affliction. These matters presented circumstances to which the jury could look in arriving at an answer to the inquiry of proximate cause. Remotely applicable to the principle announced are the cases of Gulf, C. & S. F. Ry. Co. v. Ballew, Tex.Com.App., 66 S.W.2d 659; Carey v. Pure Distributing Corp., 133 Tex. 31, 124 S.W.2d 847; Sullivan v. Flores, 134 Tex. 55, 132 S.W.2d 110; Missouri-Kansas-Texas Ry. Co. v. McLain, 133 Tex. 484, 126 S.W.2d 474.

Believing that no reversible error is presented by the assignment of error and the points presented thereunder, they are overruled and the judgment of the trial court is affirmed.

McDONALD, C. J., not sitting.

### On Motion for Rehearing.

SPEER, Justice.

Appellant has filed a motion for rehearing, in which it insists that we were in error in holding that the trial court properly

refused to give a peremptory instruction in its favor; this is the only point involved in the appeal.

It is earnestly insisted that we have only referred to certain testimony which we considered sufficient, if believed by the jury, to support the verdict returned. It is further argued that we have ignored parts of the witness Jones' testimony, which contradicted those parts referred to by us, and have not mentioned nor considered testimony given by its witness, Mr. Bacon, which is in direct conflict with that part of Jones' testimony mentioned. Bearing in mind that the only question before us was whether or not the court erred in refusing the peremptory instruction, it was only necessary for us to determine whether or not there was a dispute of fact in the evidence, for a jury determination. We only referred to certain of the evidence to disclose that there was sufficient evidence before the jury to support its findings. It matters not, in such cases as this, how much evidence there is to the contrary, it was the function of the jury to weigh the evidence and to give credence to that part believed to have the greater weight. When this has been done, the Appellate Court may not set aside such a verdict, when there is any evidence of probative force to support it, and substitute its own opinion for that of the jury. Choate v. San Antonio & A. P. Ry. Co., 91 Tex. 406, 44 S.W. 69; Post v. State, 106 Tex. 500, 171 S.W. 707; Oats v. Dublin Nat. Bank, 127 Tex. 2, 90 S.W.2d 824. Many other cases to the same effect could be cited.

Appellant contends that Jones' testimony referred to by us in the opinion, would not support the jury's verdict, because, they say, he gave contradictory evidence on cross-examination; that by so testifying, neither of his statements is entitled to credit; citing us to In re Gustav Schaefer Co., 6 Cir., 103 F.2d 237. We do not believe that case announces the correct rule in Texas. We think that under such circumstances a jury question is raised, and the jury may reconcile the conflict, if it can, and determine which, if either, statement is true. New St. Anthony Hotel Co. v. Pryor, Tex.Civ.App., 132 S.W.2d 620, writ refused; Foster v. Woodward, Tex. Civ.App., 134 S.W.2d 417, writ refused; Hyde v. Marks, Tex.Civ.App., 138 S.W.2d 619, writ dismissed, correct judgment; Heckert v. American Casualty Co., Tex.Civ. App., 129 S.W.2d 424.

We believe we have properly disposed of the question involved, and have added these additional remarks and authorities because of the insistence of counsel for appellant, in their motion for rehearing.

The motion is overruled.

McDONALD, C. J., not sitting.