No. 37,954

Mrs. H. J. Weiss and The Druggists' Mutual Insurance Company of Iowa, a Corporation, *Appellees*, v. The Gas Service Company, a Corporation, *Appellant*.

(223 P. 2d 702)

Opinion filed November 10, 1950.

*N. E. Snyder*, of Kansas City, argued the cause, and *R. D. Garver*, of Kansas City, Mo., was with him on the briefs for the appellant.

*Leonard O. Thomas*, of Kansas City, argued the cause, and *Arthur J. Stanley, Arthur J. Stanley, Jr., J. E. Schroeder* and *Lee E. Weeks*, all of Kansas City, were with him on the briefs for the appellees.

The opinion of the court was delivered by

Harvey, C. J.: This was an action to recover damages to personal property by an explosion and fire alleged to have been caused by the negligence of defendant. The appeal is from an order overruling defendant's motion to strike one paragraph of the petition and from an order overruling its demurrer to the petition on the ground that it does not state facts sufficient to constitute a cause of action against the defendant.

The petition may be summarized or quoted from as follows:

2. The plaintiff, Mrs. H. J. Weiss, on September 1, 1947, occupied an apartment, rented from Walter H. Herndon and wife, situated over the Herndon drugstore on North Main Street in Ottawa, Kan., and was the owner of various articles of personal property, household furnishings, furniture and wearing apparel situated in the

apartment, which were destroyed, or partially destroyed, by an explosion and fire which occurred about 3:30 p. m. on that date.

3. That on September 1, 1947, and prior thereto, the defendant, Gas Service Company, was and had been engaged in the business as a public utility distributing natural gas for household and business uses within the city of Ottawa; that it owned and maintained distributing mains in the city and supplied natural gas for a consideration to the public and to Herndon and wife for their use in the drugstore and apartment; that for many years prior to September 1, 1947, there were three services on the east edge of the property leased by Herndon and his wife, which services were connected to defendant's main, which ran along the west side of Hickòry street. That one of these services ran southwesterly from the main across the rear of the lot on which the drugstore was situated and underneath a concrete apron and underneath a stock room of the Herndon drugstore and into the basement under the store; that the valves on this service had been closed for many years prior to August 29, 1947; that on August 29, 1947, or thereafter, there were not any gas appliances connected to this service and there was no meter attached thereto; that the service had been abandoned for more than twenty years; that it had been laid at the time the defendant, or its predecessors, first laid a main on Hickory street, the date of which was unknown to plaintiffs but well known to defendant; that on August 29, 1947, defendant permitted gas to enter this abandoned service without notifying the plaintiffs, or either of them, or anyone on their behalf, of its intention to do so, and that the pipe of said service on that date was in a dilapidated state of repair; that it leaked and allowed and permitted gas to escape under the Herndon drugstore, and that thereafter the gas was ignited in a manner unknown to plaintiffs and caused the explosion on the date and time hereinabove set forth.

"4. That the said explosion hereinabove described was caused by the defendant's fault and by its negligence and carelessness in the following respects, to-wit:

"(a) That on or about the dates aforesaid the said defendant negligently and carelessly permitted gas to enter the said old abandoned service line, which said line was not capable of preventing the escape of gas as aforesaid.

"(b) That the said defendant on the said 29th day of August, 1947, turned off the gas, disconnected all of said services and thereafter reconnected said services and turned on the gas at each of the said three services hereinabove described, all without adequate or proper or careful inspection of the said services or of the gas lines underneath the stock room and drugstore, and

without adequate or proper inspection of the other services and gas appliances connected thereto, and that as a result thereof the condition of the said lines was not discovered and gas leaks were not discovered and gas accumulated on the said premises and exploded on the date aforesaid.

"(c) That the service pipes serving the said Herndon's drugstore and in the ground round about the Herndon's drugstore at and before the date aforesaid were in a dilapidated condition and were old and rusty and pitted and cracked and not in a proper condition for the carrying of natural gas, and that as a result thereof gas leaked and escaped from the said pipes, but that the condition of the said pipes and each of them were known to the defendant, its agents, servants and employees, or should have been known to the said defendant, its agents, servants and employees in the exercise of ordinary and reasonable care, and that as a result thereof gas accumulated inside the said store or stock room and exploded as aforesaid.

"(d) That defendant by greatly increasing the pressure in said mains at and about the time aforesaid negligently and carelessly caused said service lines to crack and permit the escape of gas, thereby causing the explosion hereinabove described.

"(e) That defendant without permission or authority permitted gas to escape into the said abandoned service line and thereby appropriated the same to its own use, and that gas escaped therefrom and exploded and caused the fire as aforesaid."

5. That plaintiffs' property destroyed by the explosion and fire was reasonably worth the sum of $1,199.

6. That the plaintiff, Druggists' Mutual Insurance Company of Iowa, prior to the fire, issued its insurance policy on the property which was destroyed in the sum of $500, and after the fire paid that sum to plaintiff, Mrs. Weiss.

The prayer was for a judgment against defendant in favor of both plaintiffs for $1,199 and costs.

Defendant attacked the petition by a motion to separately state and number, to make definite and certain in certain particulars, and to strike subdivision (e) of paragraph 4. These motions were heard by the court and overruled. Defendant then filed its demurrer to the petition, which also was overruled. An appeal from these rulings was timely taken.

In this court appellant first argues that the petition alleges no breach of any duty owed by defendant to plaintiffs, and hence it does not state a cause of action.

By its motion to make definite and certain defendant had asked plaintiffs that the phrase in paragraph 4 (c), which reads:

"But that the condition of the said pipes and each of them were known to the defendant, its agents, servants and employees, or should have been known

to the said defendant, its agents, servants and employees in the exercise of ordinary and reasonable care, . . ."

be made more definite as to whether plaintiffs alleged actual knowledge of defendant, its agents, servants and employees, of the condition of the pipes, or alleging that defendant, its agents, servants and employees should have known the condition, and if not so amended it should be construed as not alleging actual knowledge. In their brief counsel for appellees concede, for the purpose of our ruling on the demurrer, that the petition should be construed as not alleging actual knowledge, but alleging that defendant should have known the condition of the pipes before it turned the gas into them. Counsel for appellant also ask that the petition be made more definite and certain by alleging whether the defendant owned the services or the service pipes. Obviously, this was asked not for the purpose of getting information, since defendant should have definite knowledge of that matter, but for the purpose of having a definite statement in the petition to be considered upon the demurrer. With respect to that, counsel for appellees, in their brief, concede that for the purpose of the demurrer the petition must be construed as though it alleged that defendant did not own the service pipes.

Appellant then argues:

"We thus have a cause of action based upon a theory that the explosion, fire and resulting damage was negligence of the defendant in shutting off gas which was already connected to three 'services'; turning on the gas again in connecting the three same 'services'; and obviously when the service pipes not owned or installed by defendant were in the same condition when the gas was turned back on as they had been for the preceding twenty years under the allegations of the plaintiffs' petition."

We think this statement goes too far. The petition, as we read it, does not allege that the service pipe, which ran in a southwesterly direction from the main across the rear of the lot on which the drugstore was situated and underneath a concrete apron and the stock room of the drugstore and into the basement of the drugstore, was serving gas to anyone prior to its detachment from a main on August 29. After the concessions of counsel for appellees, as above stated, the petition charged all of the acts of negligence charged in the petition, hereinbefore set out, except the charge in paragraph 4 (c) that defendant knew the condition of the service pipe, leaving the allegation that it should have known, and the further concession that defendant did not own the service pipe. We understand

these concessions to have been made for the purpose of ruling upon the demurrer; what the evidence will disclose is another matter.

Appellant argues there was no duty upon defendant to discover any defects in the customers' service lines, citing *Miller v. Johnson,* 155 Kan. 829, 130 P. 2d 547, and other cases of similar import. We have examined those cases and think they are not in point here. There may be circumstances where, in making gas connections or changes in the gas pressure, it is the duty of the gas company to inspect the service lines and appliances. (See *Baker v. Kansas Power & Light Co.,* 146 Kan. 258, 69 P. 2d 731, and authorities cited therein.) A very good statement of the principal phases of the matter is set out in 24 Am. Jur. 684, § 27, which reads:

"In accordance with the general rule considered in the preceding section, it has been held that a gas company, before turning on gas, or permitting it to be turned on, for the benefit of a tenant in an apartment house who has applied for it, must use reasonable precautions to ascertain that the pipes in the building are in such condition that gas will not flow into the apartments of other tenants who have not applied for it, to their injury. In such a case, the company cannot deny its liability for injuries resulting from failure to use reasonable precautions, on the ground that it has no right to enter upon the premises of the parties not applying for gas for the purpose of making an inspection of the pipes therein. This rule applies even though the gas pipes used by the gas company are old pipes that were not installed by the company and do not in fact belong to it. Similarly, a gas company, before connecting its mains with the service pipe of a house, is bound to ascertain that the outlets in the house are closed, especially those which it has itself left open; where a third person volunteers to install a meter for a gas company and is permitted to install it and connect it with service pipes, it is the duty of the gas company to make an inspection of the pipes and connections before it turns on the gas."

Perhaps a more detailed discussion of the subject in its several phases is set out at 38 C. J. S., pp. 734 to 740. See, also, the annotations in 138 A. L. R. 871, referring to prior annotations, and beginning at page 874 a number of cases from our own state and other jurisdictions illustrating the text. See, also, *Hebert v. Baton Rouge Electric Co.,* 150 La. 957, 91 So. 406; *Scarborough v. Central L. & P. Co.,* 58 Ariz. 51, 117 P. 2d 487; *Sawyer v. Southern California Gas Co.,* 206 Cal. 366, 274 Pac. 544; *Julian v. Sinclair Oil & Gas Co.,* 168 Okla. 192, 32 P. 2d 31; *Consolidated Gas Co. v. Connor,* 114 Md. 140, 154, 78 Atl. 725; *Lynchburg Gas Co. v. Sale,* 160 Va. 783, 169 S. E. 577. Other cases to the same effect are collected in American Digest System, Gas, Key No. 18. We think it cannot be said here that the petition alleges no breach of any duty owed by defendant to plaintiffs.

Appellant argues that its general demurrer to the petition should be sustained for the reason that it is not based upon a single definite theory, but upon several indefinite theories, which it listed as follows:

"(a) The old abandoned service *line* leaked and caused the damage.

"(b) The service *pipes* were old, pitted, and cracked, and gas leaked.

"(c) The service *lines* were caused to crack and permit the escape of gas because defendant greatly increased the pressure in the mains.

"(d) The defendant knew the condition of the service pipes." (Out for the purpose of ruling on the demurrer.)

"(e) The defendant should have known of the condition of the service pipes.

"(f) A great increase of pressure in the mains caused the old abandoned service line to crack." [Perhaps a duplicate of (c).]

We think these allegations pertain to different acts of negligence. In *Swayzee v. City of Augusta,* 108 Kan. 785, 197 Pac. 208, 210, where a similar contention was made, it was said (p. 788):

"The requirement that the petition should be drawn on a definite theory does not preclude the charging of several acts of negligence, . . ."

And in the very recent case of *Jerecki Manufacturing Co. v. Shields,* 169 Kan. 640, 220 P. 2d 144, the pertinent rule was thus stated:

"In order to cause a petition to be subject to a demurrer because not brought on a definite legal theory, there must be such a confusion of theories that proof of one theory would tend to disprove the other."

Here the proof of any one of the grounds of negligence charged in the petition would not tend to disprove any one of the others; therefore, the point is not well taken.

We think it well settled by our decisions that when a gas company connects service lines to its mains it has a duty to know that the service lines are capable of carrying the gas. This is upon the ground and for the reason that gas is such a dangerous thing when it escapes from service lines that due care under the situation requires such an inspection irrespective of whether the gas company, or some other person, owns such lines. We think it cannot be said that the petition alleges no breach of duty owed by defendants to plaintiffs.

Appellant complains of the ruling of the court in denying its motion to strike subdivision (e) of paragraph 4 of the petition upon the ground that it is a conclusion of law. We think the point is not well taken. When the gas company turned the gas into a line which had been abandoned and which had no meter, and which gas it was

not selling to anyone, we think it proper to say that it did so for its own purposes.

We find no error in the record. The judgment of the trial court is affirmed.