**WEST TEXAS UTILITIES CO. v. DUNLAP et al.**

No. 2330.

Court of Civil Appeals of Texas. Eastland.

Feb. 12, 1943.

Rehearing Denied March 5, 1943.

E. L. Harwell, of Abilene, and Josh Groce, of San Antonio, for appellant.

Scarborough, Yates, & Scarborough, of Abilene, for appellees.

FUNDERBURK, Justice.

Mrs. Winnie Jo Dunlap, widow of Earnest Dunlap, deceased, and Gerald Lane Dunlap, minor child of Earnest Dunlap— the latter acting by Winnie Jo Dunlap as his next friend—brought this suit against the West Texas Utilities Company to recover damages (under the Death Statute, R.S.1925, Title 77, Vernon's Ann.Civ.St. art. 4671 et seq.) resulting from the death of the said Earnest Dunlap. Other parties to the suit designated as "involuntary plaintiffs" were Silas N. Dunlap and Virgie Dunlap, father and mother, respectively, of said Earnest Dunlap, deceased.

From an adverse judgment of the court below, the defendant has appealed. The following statement of the case made by appellant in its brief is "accepted" by appellees in their brief "as substantially correct."

"Sometime in either 1931 or 1932 Appellant at a cost to it of approximately $15,000.00 erected a high voltage power line from one of its sub-stations to and upon property of Baird Refining Company near Baird, Texas, in order to supply this oil refining company with electricity. This line at all times and places material to this suit was between 27 and 28 feet above the ground. It had a capacity to carry 13,000 volts of electricity. In February, 1941, the refinery commenced to buy electricity from a municipal plant of the city of Baird and discontinued the electric service of appellant. Appellant's line was disconnected from the refinery plant without its knowledge. Appellant, as soon as it found out about its power line being disconnected, since it had incurred such heavy expense to provide this refinery with electric current, undertook to arrange with the refinery to renew and continue its electric service. Negotiations were in progress between appellant and the refinery officers at the time the accident involved in this suit occurred.

"During June of 1941, the Refining Company commenced the construction of an addition to its warehouse. The addition was constructed of galvanized iron and was 30 ft. x 36 ft. and about 17 ft. all over in height, leaving a clearance of at least 8 feet from the top of the addition to appellant's high line. When the change was made from appellant's line to the City line the appellant's line was left charged with 13,000 volts of electricity, and on July 1, 1941, Earnest Dunlap (sometimes called Elbert Dunlap in the record) an employee of the Refining Company, was on top of the building and carrying a piece of galvanized ridgeroll about 10 feet in length, and in some manner brought the same in contact with appellant's line, causing him to sustain a shock and fall from the building, from which he died.

" * * * At a trial before the court, judgment was rendered awarding damages to Winnie Jo Dunlap in the sum of $750.00; to Gerald Lane Dunlap in the sum of $3,000.00; and in favor of Silas N. Dunlap and wife, Mrs. Virgie Dunlap, the surviving parents, in the sum of $327.50. The amount awarded the parents was to cover expenses they had incurred for the burial of Earnest Dunlap, and $250.00 of the amount awarded the widow was for the same purpose.

"Appellant excepted to the judgment of the trial court and gave notice of appeal, and requested the trial court to make and file findings of fact and conclusions of law * * *. The trial court found appellant guilty of negligence in two particulars and that these acts together were the proximate cause of the injuries and death of the deceased. The acts of negligence referred to were: (a) that appellant was negligent in failing to disconnect its line off of the grounds of the Refining Company, and relieve its said line of its load of electricity, and (b) in maintaining its high voltage line over the property of the Refining Company without insulating the same. The Court further found that the deceased was not guilty of any negligence which was either a proximate cause or contributing cause of his death."

'The questions presented for decision are complicated by other questions involving the proper interpretation of the record, particularly with respect to which of three or four grounds of recovery constitute the true basis of the judgment. For example, in the agreed statement of the case above quoted is the following: "The trial court found appellant guilty of negligence in two particulars * * * (a) that appellant was negligent in failing to disconnect its line off of the grounds of the Refining Company, and relieve its said line of its load of electricity; and (b) in maintaining its high voltage line over the property of the Refining Company without insulating the same." Thus does it appear to be agreed that only *two* grounds of recovery involving negligence in two separate respects, constitute the basis of the judgment; yet in the trial judge's conclusions of fact and law appears the following: "I find * * * that the building [referred to in the above statement] had been under construction about a month and that the defendant, West Texas Utilities Company *should have known* that the building was under construction and [therefore] have disconnected the electricity in its line." (Italics ours). Possible implication of a finding that appellant *did* make such discovery (had such knowledge) is affirmatively excluded by the further finding that "Defendant, West Texas Utilities Company, was guilty of

negligence in not discovering the construction of the building of the Baird Refining Company under its wires and disconnecting the voltage from said wires." It would hardly be contended that if, as thus found, appellant was negligent in "not discovering that the building was being erected", that it did discover such fact.

There was no finding establishing the truth of plaintiffs' allegation that said high line was only approximately 4 ft. above the roof of the building which was being constructed under the wires. The above agreed statement shows that it was not less than 8 ft. A colloquy between counsel should, we think, be construed as settling by agreement that the height of the wires above the roof was 8 ft. and 7 inches. It was undisputed that the height of the line above the ground was 27 or 28 feet.

It is in the light of these facts that we proceed to a consideration of the contentions of the parties.

We pass over appellant's first and sixth points, both in substance the same, because they each combine the second and third points in one; and the disposition of each of the latter will render separate discussion of the former unnecessary.

■ The question presented by the second point is: Was there any evidence to support the conclusion of fact that "the failure of Appellant to insulate its high voltage line maintained over the Baird Refining Company property was a proximate cause of Earnest Dunlap's injuries and resulting death". An essential element of a "proximate cause" is the foreseeability of hazard to the injured party. The judgment, in so far as it rests upon any finding to the effect that failure to insulate was a proximate cause of the death, must be tested in recognition of the fact, found by the trial judge, as before noted, that appellant was without knowledge of the erection (had not discovered the erection) of the building under the power line. When so tested, it seems hardly arguable that there was any evidence tending to show that appellant should have reasonably foreseen that if it failed to insulate the wires in the particular place where the injury occurred such failure would constitute an unreasonable hazard to anyone. Absent any knowledge of the building operations, the appellant, having strung its line upon poles 27 or 28 ft. above the ground—5 or 6 ft. above the height indicated by statute as safe (R.S. 1925, Art. 1436) could not reasonably foresee any danger to the deceased as resulting from a failure to insulate. Brush Electric Light & Power Co. v. Lefevre, 93 Tex. 604, 57 S.W. 640, 49 L.R.A. 771, 77 Am. St.Rep. 898.

The question presented by appellant's third point is: Was there any evidence "that the failure of appellant to disconnect its line off of the grounds of Baird Refining Company, and relieve the line, with which Earnest Dunlap came in contact, of its load of electricity" was a proximate cause of Earnest Dunlap's injuries and resulting death? This inquiry must likewise proceed in recognition of the fact that appellant was without knowledge of the erection of the building under its line. Everything said above in reference to the second point is equally applicable to this. We shall hereafter have occasion to refer back to this subject for an additional observation or two.

■ Appellant's fourth point presents the contention that there was no evidence that failure to insulate appellant's power line, as maintained over the property of Baird Refining Company, was negligence. No statute enacted for the benefit of the deceased requires insulation. If, therefore, there existed any duty to insulate, it arose from the fact that under circumstances known to appellant a reasonably prudent person would have foreseen danger to deceased from failure to insulate. Unless the decision in Brush Electric L. & P. Co. v. Lefevre, supra, has been overruled—and we are unaware that it has—we think there can be no escape from the conclusion that the evidence in this case, as a matter of law, failed to show negligence in the failure to insulate.

■ In another respect there was, we think, an absence of evidence to raise an issue of negligence in the failure to insulate. The burden of showing the negligent character of the failure to insulate was upon the plaintiffs. Merely showing failure to insulate warrants no presumption or inference of negligence. The evidence wholly· failed to show that it was practicable generally to insulate a power line carrying 13000 volts; or that, by doing so, any greater measure of safety would result than in placing the line uninsulated upon poles at a height of 27 or 28 ft. The most that can be said regarding the evidence upon this point is that admissions were elicited to the effect that it would have been *possible* to have insulated the wires

at the place of injury; and that if it had been done such injury would not have happened. But in the absence of knowledge of the special condition created by the erection of the building, such test is of no value at all. It was in evidence, and besides we know judicially, that appellant has many many miles of high power lines. In the absence of knowledge of such special circumstances, possibly giving rise to the duty to insulate at a particular place, the duty, if it exists at all, would extend to all the lines. Failing to show that appellant knew of the building operations, plaintiffs in order to show negligence in failing to insulate would be under the necessity of showing that it was practicable and safer to insulate appellant's high power lines generally, although strung upon poles 27 or 28 ft. above the ground. The duty to insulate when it exists is an alternative duty and upon the facts of this case, in our opinion, as a matter of law appellant complied with such alternative by placing its wires 27 or 28 ft. above the ground.

■ The fifth point presents for decision whether there was any evidence to raise an issue that "Appellant was guilty of negligence in failing to disconnect its line off of the grounds of Baird Refining Company and [thereby] relieving the line, with which Earnest Dunlap came in contact, of its load of electricity." For ten or eleven years said high line carrying its charge of 13000 volts of electricity had been in the same position and serving the Baird Refining Company. In February, 1941, prior to the accident on July 1, 1941, the service was discontinued and the line disconnected from the plant of the refinery, by the Refining Company. The court found "that the West Texas Utilities Company did not disconnect its line and relieve said line of its load of electricity because the officials of the West Texas Utilities Company were attempting to again secure the Baird Refining Company as a customer; but that the defendant, West Texas Utilities Company, had been advised repeatedly that the service with the West Texas Utilities Company would not be again undertaken." The undisputed evidence showed that negotiations for the resumption of the service were still in progress at the time of the accident. The material fact, however, is that the line was being maintained in its original position with the consent of the Baird Refining Company—the only one, at least the only one in the absence of the knowledge of said special circumstances—entitled to object thereto.

■ The question is: Do the facts alone, that appellant was not at the time supplying electricity to Baird Refining Company and that it could, with little expense, have shut off the current at a point outside of the Baird Refining Company's property line, constitute the failure to do so negligence? We do not think so. The authorities relied upon, with one possible exception, imply, if they do not express the fact, that a new or greater degree of danger resulted from the condition of the disconnected wires. In this case there is no evidence tending to show that the line, charged as it was, was any more dangerous to anyone after the discontinuance of service than it had been at all times during the ten or eleven years previously while supplying electricity to the refinery. Then whence springs the duty, if any, involved? As said in connection with another question, no statute imposes such a duty. Was the hazard to the deceased any greater or different in character after the discontinuance of service than it was before? There was no evidence of it. It is elementary that absent a duty there can be no negligence. Independent Eastern Torpedo Co. v. Carter, Tex.Civ.App., 131 S.W.2d 125, and the authorities there collated.

If facts giving rise to a greater or different hazard, or danger, resulting from failure to cut off the current were absent, as we conclude, then it is immaterial what considerations may have motivated appellant in not cutting off the current. In the findings of fact is the following: "I further find that the West Texas Utilities Company did not relieve said line of its load of electricity in order that trespassers would not steal said line." The evidence may have warranted such finding; but the fact rightly appraised is immaterial. If appellant was not negligent in the particular respect charged, regardless of such reason, then the question is not affected by the fact that one of the reasons was that it would render appellant's property less likely to be stolen or injured. The further finding "That said heavy charge was maintained in said line by the West Texas Utilities Company so that if anyone attempted to tamper with same that such person would be electrocuted and in that manner the property of the West Texas Utilities Company would be safeguarded," is, in our opinion, clearly an unwarranted conclusion

from the evidence. There was in the first place no pleading tendering any such issues. It is one of those irrelevances which all too often are seized upon in the trial of a case and have the effect to cloud the material issues and influence the decision through prejudice. A more reasonable interpretation of the evidence is that thieves would be less likely to tamper with lines, or to steal lines or appliances, where the lines were charged or thought to be charged, than if they were not charged. In this the presumption is implicit that they would not attempt to do so without first ascertaining whether the lines were charged or not. The facts are entirely outside the "spring gun" doctrine. There is all the difference in the world between a failure to take action for the purpose of preventing a danger of injury to trespassers, and affirmative action taken in order to create danger of injury to trespassers.

Appellees' assertion of this ground of recovery necessarily proceeds upon the assumption, as the basis thereof that appellant's maintenance of the charged line was wrongful per se, unless sufficiently excused. In our view such action was not shown to be wrongful and therefore required no excuse. Precautions which were sufficient to relieve appellant from any charge of negligence during the long period while it was serving the refinery remains sufficient after the discontinuance of the service unless the manner or effect of cutting off the current at the refinery created a new and theretofore nonexistent hazard. Of this there was no evidence.

■ At this point we recur to the question of proximate cause as affecting this ground of negligence. Proximate cause and not mere casual relation is the subject of the injury. In our opinion, appellant having no knowledge of the erection of the building under its line, its failure to disconnect its line at a point off of the grounds of Baird Refining Company and relieving the line with which Earnest Dunlap came in contact, of its load of electricity, was not a proximate cause of the injury, even though it be freely granted, as found by the trial judge, that if the current had been cut off "the unfortunate killing forming the basis of this suit would not have occurred." As said by Judge Jenkins, in Houston & T. C. R. Co. v. Maxwell, 61 Tex.Civ.App. 80, 128 S.W. 160, 164: "Doubtless Mary spoke the truth when she said to Jesus: 'If Thou hadst been here, my brother would not have died.' Still it was sickness, and not the absence of Jesus, that caused the death of Lazarus." An engineer upon a railway train by his negligence may cause delay in the train reaching a particular point at a particular time. If, when the train reaches such point, it runs into a storm which injures passengers, it may truly be said that but for the negligence which caused the delay the passengers would not have been injured. There would have been no injury because of the fortuitous fact that the train would have passed the tract of the storm before it struck. In our opinion a contention that the original negligence of the engineer was a proximate cause of the injury, in the supposed case, would be on a parity with the contention here. For another good example, see Daniels v. Ballantine, 23 Ohio St. 532, 13 Am.Rep. 264, 268.

We pass now to a consideration of the ground of recovery (apparently excluded in the agreed statement of the case) based upon the theory of negligence of appellant in failing to discover the erection of the sheet iron building, allegedly reaching up to approximately 4 ft. below the power line. This ground of negligence was pleaded, although its omission in a summary and specification, in a subsequent paragraph of the pleading, of the negligence relied upon was undoubtedly misleading and well calculated to produce an impression that it was not relied upon for judgment. This view is well supported by the fact that in the agreed statement of the case, as presented in the briefs, such ground is not included in the statement of the negligence found by the court below.

■ In our opinion, if it be properly established that by a violation of its duty of inspection, appellant was guilty of negligence in failing to discover that a building was being erected in close proximity to the line, in that such knowledge would have imposed the further duty to cut off the current from the particular section of line in such proximity to the building operations; and if such negligence was the proximate cause of the death of Earnest Dunlap and the latter was not guilty of contributory negligence, the plaintiffs would be entitled to judgment. This involves an independent ground of recovery. When liability is sought to be established upon a number of different grounds of recovery, a judgment imposing liability must be supported by all the elements of at least one of the

different grounds of recovery. In other words, all the issues in all the different grounds of recovery, except one in each, may be conclusively established in favor of the plaintiff; and yet a judgment for plaintiff would lack essential support. In our opinion the judgment in this case in so far as it may rest upon the ground of recovery now under consideration is wanting in essential support in that there is no finding that the particular negligence was a proximate cause of the injury. It was not a proximate cause as a matter of law. It was not found to be a proximate cause. In our view that issue for the reasons presently to be stated was not raised by the evidence. There was no evidence to support the allegation that the top of the building was "approximately 4 ft." from the line. As said before, we find that the line was 8 ft. and 7 in. above the top of the building. It cannot be said as a matter of law that it is dangerous to work upon a building 8 ft. and 7 in. below such a line. Plaintiffs did not allege that deceased was ignorant of the danger of contact with the line. If that was a fact, the burden of alleging and proving it was upon plaintiffs. We think the only reasonable inference from the evidence is that deceased, with the other workmen, knew that the line was charged or should be presumed to be charged. That one for several weeks should work upon a building immediately under a high power line with several others who had been warned that the line was charged or should be treated as if it were; and yet have no knowledge of it seems incredible. At least it warrants no other reasonable inference than that deceased was so advised. The only finding relating to contributory negligence was as follows: "I find that in putting on the metallic roof that deceased in handling a piece of the metallic roof came in contact with one of the wires of the West Texas Utilities Company and was killed as a result thereof * * *. I find that Earnest Dunlap was not guilty of any negligence which was either a proximate or contributing cause of his death." In our opinion the action of deceased in bringing a long piece of metal in contact with said line, absent any evidence of unavoidable accident or excusing circumstance, shows a condition from which an inference that de-

ceased's negligence was the proximate cause of his death, was at least as fully warranted as an inference that the negligent failure of defendant to discover that the building was being erected under the wire was such proximate cause. Applicable to the situation, we think, is the following by Judge Williams for the Supreme Court in Houston & T. C. R. Co. v. Harris, 103 Tex. 422, 128 S.W. 897, 899: "The burden being on a plaintiff to establish the defendant's negligence, it sometimes happens, especially in actions for injuries which resulted in death, that the facts adduced leave the cause of the injury unexplained, or in doubt, so that it may as well be attributed to negligence of the injured person as to that of the defendant. The plaintiff should fail, not as seems to have been assumed in some of the older cases, of which Texas & N. O. Ry. Co. v. Crowder, 76 Tex. 499, 500, 13 S.W. 381, is a type, because he must exclude the assumption [presumption] of contributory negligence of the person injured, but because he must prove that of the person sought to be charged as a proximate cause of the injury, which he does not do so long as he leaves his evidence equally consistent with either hypothesis." The defendant had the burden of establishing contributory negligence *by a preponderance* of the evidence. If, therefore, the evidence pro and con as relating to that issue was equal, the finding above quoted was required; and yet, such finding would not affect the operation of the principle above quoted from Judge William's opinion. There was not a word of evidence, so far as we can find, tending to show that Dunlap would have been injured even though he exercised reasonable care for his own safety. There appears, therefore, nothing in the evidence to favor the inference that he was killed as the result of defendant's alleged negligence over an inference that he carelessly raised the strip of metal to contact with the line over 8 ft. above the roof of the building. Under these circumstances the issue of proximate cause, here considered, was not raised by the evidence.

On the whole it is our opinion that the judgment of the court below should be reversed and remanded. It is accordingly so ordered.