### HILL et al. v. DALLAS RAILWAY & TERMINAL CO.
#### No. 14257.

Court of Civil Appeals of Texas. Dallas.

Dec. 1, 1950.

Rehearing Denied Jan. 12, 1951.

J. J. Fagan and Gene Bailey, both of Dallas, for appellants.

Burford, Ryburn, Hincks & Ford and Bruce Graham, all of Dallas, for appellee.

YOUNG, Justice.

The suit was by Helen Ruth Hill, surviving wife of James E. Hill, individually and as guardian of the infant daughter Cathey Jo, against appellee Company, for recovery of damages following death of the husband and father. Deceased was a cable splicer for the Southwestern Bell Telephone Company when, on July 28, 1947, in course of employment he was instantly killed by accidental contact with one of defendant's high voltage feeder lines. After jury trial and answers to issues submitted, plaintiffs filed motion for judgment, defendant moving for judgment notwithstanding jury answers to issues 1, 2, and 11. Motion of defendant was sustained and judgment entered accordingly, from which final order due exceptions were taken by adverse parties including intervenor Texas Compensation Insurance Company, seeking recoupment for workman's compensation paid to plaintiffs; the above named individuals, only, perfecting an appeal.

This is a second trial of the cause, the first resulting in a defendant's judgment based on contributory negligence of deceased; the present action going to the jury on fourth amended original petition and answer of the respective parties. In original petition, additional to defendant Street Railway, the Dallas Power & Light Company and above mentioned Compensation Company had been made parties; the Compensation carrier being omitted from later pleading perforce of an agreed settlement; the Power Company dismissal resulting from a stipulation filed November 16, 1948, viz.: "It is agreed by and between counsel for the plaintiff, and counsel for the defendant, Dallas Power & Light Company, and counsel for the defendant, Dallas Railway & Terminal Company, that the so-called feeder line involved in this case was the property and belonged to the defendant Dallas Railway & Terminal Company, and that the defendant Dallas Power & Light Company exercised no control, or right of control, over said feeder line of the electricity, if any, therein; and plaintiff, by and through their counsel, stipulate that based on this stipulation they will not raise any issue regarding the matter of clearance between the wires of the defendant Dallas Railway & Terminal Company and the defendant Dallas Power & Light Company, or the violation of regulations concerning clearance, if there are any such regulations; and that this stipulation will not be read to the jury."

The scene of accident was at southeast corner of Harwood and Marilla Streets, Dallas, where was located a pole of Dal-

las Power & Light Company which had been recently moved from a distance of about 11 feet to within some 45 inches of a 600-volt feeder line belonging to defendant Railway. Said pole was used jointly by the Phone and Light Companies, wires and equipment of both utilities being attached thereto. Deceased Hill had been instructed by his employer to ascend the pole for the purpose of cutting out an old cable terminal and cutting in a new one occasioned by the pole having been moved, —working from a suspended platform. Attached to the pulley rope by which his bag of tools was being drawn up was a metal chain 36 inches in length; and while in act of reaching down for the tools, his other hand grasping a cable strand, the chain came in contact with defendant's said energized feeder wire, resulting in a high voltage shock to Hill and his death.

The feeder line (an uninsulated metal wire) had been maintained in its then condition by the Street Railway for many years, located on east side of Harwood Street, running north and south, and providing additional energy for movement of its electrically propelled cars. It stood about 25 feet above the ground, well within the provisions of art. 1436, Vernon's Ann.Civ.St., requiring a clearance of 22 feet. It was suspended from Company poles, the nearest being some 56 feet from place of accident. The pole in question, owned by the Power & Light Company, was jointly used by the Telephone Company as already stated, the lines of these two utilities running east and west. The following measurements were in evidence: that the platform on which deceased sat when injured was 2 feet 5½ inches above said feeder line and 18 inches below the Telephone cable containing its wires (with supporting strand), which crossed at right angles, a total distance between cable and feeder line of 3 feet 11½ inches.

Plaintiffs' specific allegations in support of their cause of action and the Street Railway defenses thereto are sufficiently reflected in the jury issues and answers, viz: (1) That maintenance of the electric feeder line in bare condition by the defendant Street Railway at the time and place in question was negligence and proximate cause of the fatal injuries to Hill; (2) that defendant Railway failed to place and maintain a warning sign on the feeder line at said time and place, but such was *not* negligence; (3) that James E. Hill did not violate the safety regulations of his employer in placing the hand line so that the chain came in contact with a foreign wire; (4) that the act of Hill in taking hold of the hook or chain on the hand line while holding on to the Telephone Company cable strand was *not* a failure to exercise ordinary care; (5) that no negligence was involved in Hill's taking hold of the hook or hand line before ascertaining whether or not it touched a foreign wire; (6) Hill, in placing the hand line where it would touch the feeder line, did not fail to exercise ordinary care; (7) the act of Hill in instructing his helper to raise the tools to him with the hand line in close position to the feeder line was *not* a failure to exercise ordinary care; (8) the failure on part of helper Atkinson to warn Hill that the hand line chain was touching the feeder line was not the sole proximate cause of injury; (9) failure of Hill to remove the hand line from its position nearest the feeder line before raising of tools was *not* negligence; (10) moving of the pole in question was not the sole proximate cause of injury; (11) the act of helper Atkinson in permitting chain on hand line to touch the feeder line was not the sole proximate cause of injury; (12) failure of Hill's foreman L. L. Thofern to notify defendant Railway Company of the time and place of Hill's work was not a new and independent cause of injury; (13) as between Hill and Street Railway Company, the accident was not an unavoidable one; (14) use by Telephone Company of a chain as part of the hand line was not the sole proximate cause of accident; (15) Hill did not assume the risk incident to coming in contact with the feeder line; (16) damages sustained by minor plaintiff and surviving wife totaled $52,000 ($12,000 and $40,000).

Testimony generally pertinent to above issues and controversy consists of the following: That it was not customary in the

industry to insulate these feeder lines, no Dallas Power & Light Company wires being insulated, for reason of impracticability; that the ordinary covering seen on overhead wires in the City was weather-proofing and not insulation; that it was customary for Street Railway employees to put a rubber hose on any of its wires when notified by employees of the Telephone Company that they were working in the vicinity of its lines; that Telephone Company employees were instructed to call the Street Railway Company at such times, but that no one connected with the Phone Company had called defendant Railway on the occasion that the particular work was to be done. There was an understanding between the three utilities named that employees of either could climb the poles of the other whenever necessarily incident to their work.

On face of above jury answers defendant was found guilty of negligence in one particular (maintenance of its feeder line in a bare condition at such time and place) with Hill's fatal injuries proximately resulting, deceased being held nowise at fault; the court's grant of motion non obstante veredicto for defendant reversing the situation and holding in effect that deceased was negligent as a matter of law, with defendant not duty bound under the circumstances to maintain the feeder wire in an insulated condition. Appellants' points of error, eight in all, though variously phrased, are addressed solely to the court ruling just stated.

■ The acts and conduct of James E. Hill on the occasion in question leading to his death are reflected in a lengthy record, testimony concerning which we deem it unnecessary to outline in detail. Suffice it to say that deceased was undoubtedly in the exercise of some degree of care at the time, making applicable the rule stated in Wichita Valley Ry. Co. v. Fite, Tex. Civ.App., 78 S.W.2d 714, and Henwood v. Gilliam, Tex.Civ.App., writ refused, 207 S.W.2d 904, that where there is evidence showing some care and the question is one of sufficiency of the care, a question of fact for the jury is presented.

But the court's rendition of judgment for defendant despite affirmative answers to issues 1 and 2, requires a closer examination of the testimony in whole. As we have already seen, defendant's feeder wire hung from its own poles, midway of which and 45 inches to the east stood the jointly used pole of the Light and Telephone Companies. It is not disputed that the latter pole had been recently moved from a point 11 feet further east to the closer location at time of accident. As to when the pole was moved, that is, how recently, the record is silent; and as to actual knowledge by the Street Car Company of the moving, Howard, its trouble shooter and lineman, testified that he had none; that he had never seen the pole at new location, knowing where it had been moved from (its former position) by presence of the old cable terminal and fresh concrete topping of the old hole. Thofern, Hill's foreman, also testified in the same connection: "A. The job he (Hill) was assigned to do over there was, this was a new pole that was set, and the old pole was out in the walkway, at that point, and he was just to remove a terminal that was hanging out on this messenger, just move it up a little, and taking the slack out of the wire. * * *

"Q. This cable terminal, was that on the old pole before they took it down? A. Yes, it was attached to the old pole before they took it down."

■ As heretofore observed, appellants' claim of liability for the fatal injuries to James E. Hill is predicated upon jury answers to issues 1 and 2 that maintenance of the uninsulated feeder wire "at the time and place involved herein" was negligence proximately resulting in his death; obviously referring to its proximity to the Light Company pole on July 28, 1947,—a distance of 45 inches. It appears without dispute that the pole had been recently moved by a third party to the location mentioned in the foregoing issues; in consequence of which we think appellee correctly asserts that liability, if any, on its part must be conditioned upon knowledge, either actual or constructive, of the change in position of said pole. As acts

or omissions constituting negligence concerning the moving of said pole, appellants had charged in earlier pleading a failure by defendant to discover by inspection the maintenance of its feeder line in such close proximity; which allegation or specific ground of action had been omitted from the pleading on which the cause was last tried; the trial court, on hearing of exceptions to previously amended petitions, having ruled that aforesaid allegations should be stricken as in conflict with above quoted stipulation wherein the parties agreed not to raise any issue "regarding the matter of clearance between the wires of the defendant Dallas Railway & Terminal Company and the defendant Dallas Light & Power Company, or the violation of regulations concerning clearance, * * *." The particular ruling on exceptions is not before us for review; in which connection appellants strenuously contend that it was not intended by the parties under this stipulation to prevent them "from alleging and proving the matter of clearance as between a *wire* belonging to the Dallas Railway & Terminal Company and a *pole* belonging to the Dallas Light & Power Company." Be this as it may, the dangerous condition here, not being of its own creation, the duty of defendant Street Railway Company to insulate its wires against such a contingency did not arise until after actual knowledge of the shift in position of pole, or the lapse of such time as in the exercise of ordinary care the changed situation should have been discovered. 18 Am.Jur., Electricity, sec. 100, p. 496; 29 C.J.S., Electricity, § 47, p. 596; West Texas Utilities Co. v. Dunlap, Tex.Civ.App., 175 S.W. 2d 749; Mirnek v. West Penn Power Co., 279 Pa. 188, 123 A. 769; Reed v. Duquesne Light Co., 354 Pa. 325, 47 A.2d 136. No request for an issue of knowledge by defendant of the changed conditions above portrayed having been requested by plaintiffs, the same was waived; and, absent a showing of such knowledge, either actual or constructive, aforesaid jury findings constitute an insufficient basis of recovery.

The rule of law just above stated was invoked under comparable facts in West Texas Utilities Co. v. Dunlap, supra, where defendant had maintained an uninsulated high voltage line to a refinery for over ten years. The refining company discontinued electric service in February 1941, and during June started construction of an addition to its warehouse which was under the energized high line, with a clearance of some eight feet. In July, a month later, Dunlap, refinery employee, while carrying a piece of galvanized metal on top of the building, caused it to contact the line, resulting in his death. The trial court rendered judgment for plaintiffs, finding the utility company negligent in failing to disconnect its line after discontinuance of service to the refinery, and in maintaining the same *without insulation*. The court's findings of fact were that, while defendant utility company had no actual knowledge of the construction in progress under its wires, it should have known such fact and disconnected the line, since the work had been under way for a month; also finding that defendant was negligent in *not discovering the new construction*. In reversing the trial court, Judge Funderburk, for the Eastland Court, said: "The question presented by the second point is: Was there any evidence to support the conclusion of fact that 'the failure of Appellant to insulate its high voltage line maintained over the Baird Refining Company property was a proximate cause of Earnest Dunlap's injuries and resulting death'. An essential element of a 'proximate cause' is the foreseeability of hazard to the injured party. The judgment, in so far as it rests upon any finding to the effect that failure to insulate was a proximate cause of the death, must be tested in recognition of the fact, found by the trial judge, as before noted, that appellant was without knowledge of the erection (had not discovered the erection) of the building under the power line. When so tested, it seems hardly arguable that there was any evidence tending to show that appellant should have reasonably foreseen that if it failed to insulate the wires in the particular place where the injury occurred such failure would constitute an unreasonable hazard to anyone. Absent any knowledge of the building operations, the appellant, hav-

ing strung its line upon poles 27 or 28 ft. above the ground—5 or 6 ft. above the height indicated by statute as safe (R.S. 1925, Art. 1436) could not reasonably foresee any danger to the deceased as resulting from a failure to insulate. Brush Electric Light & Power Co. v. Lefevre, 93 Tex. 604, 57 S.W. 640, 49 L.R.A. 771, 77 Am.St.Rep. 898." [175 S.W.2d 752.]

Appellants endeavor to differentiate the Dunlap case, supra, because of the understanding between the several utility companies for joint use of the poles of either, thereby inferring a constructive knowledge or responsibility on part of the Railway Company for movement of said pole. But such agreement has no particular significance where, as here, the feeder line was not attached to the offending light pole, with the Telephone Company and Light Company the only users thereof; the contact causing injury being made in middle of the feeder span where no join use of poles existed.

It should be here observed that before the "recent" removal of said pole it had stood for many years 11 feet to the east of defendant's feeder line and at a place where, so far as reflected by the record, it could not be reasonably anticipated that any person working on or about the pole would come in contact with such wire.

█ It is further contended that movement of the pole by the Light Company could not independently and alone have resulted in this fatal accident; being merely a concurring cause, as demonstrated by the jury answer to issue 22 that the change in location was not the sole proximate cause of injury; in other words, that the situation of danger would not have arisen had the feeder line been properly insulated. The duty of companies to insulate their wires is not absolute, extending to all parts of the system; being limited on the other hand to places where people may be reasonably expected to resort for business or pleasure. 18 Am.Jur., sec. 97, pp. 491, 492; 29 C.J.S., Electricity, § 44, p. 591; Brush Electric Light & Power Co. v. Lefevre, 93 Tex. 604, 57 S.W. 640; West Texas Utilities Co. v. Dunlap, supra. Again, the

argument of counsel is best answered by recourse to the case last cited where the Eastland Court in disposing of a similar point, held: "Merely showing failure to insulate warrants no presumption or inference of negligence. The evidence wholly failed to show that it was practicable generally to insulate a power line carrying 13000 volts; or that, by doing so, any greater measure of safety would result than in placing the line uninsulated upon poles at a height of 27 or 28 ft. The most that can be said regarding the evidence upon this point is that admissions were elicited to the effect that it would have been possible to have insulated the wires at the place of injury; and that if it had been done such injury would not have happened. *But in the absence of knowledge of the special condition created by the erection of the building, such test is of no value at all.* It was in evidence, and besides we know judicially, that appellant has many many miles of high power lines. In the absence of knowledge of such special circumstances, possibly giving rise to the duty to insulate at a particular place, the duty, if it exists at all, would extend to all the lines. Failing to show that appellant knew of the building operations, plaintiffs in order to show negligence in failing to insulate would be under the necessity of showing that it was practicable and safer to insulate appellant's high power lines generally, although strung upon poles 27 or 28 ft. above the ground. The duty to insulate when it exists is an alternative duty and upon the facts of this case, in our opinion, as a matter of law appellant complied with such alternative by placing its wires 27 or 28 feet above the ground." (Emphasis ours.)

Appellants' citations of authorities in support of a recovery are clearly distinguishable, involving sets of facts where defendant had knowledge of the dangerous condition or notice, either actual or constructive, that its uninsulated wire was located at a place where persons might reasonable be expected to go. Appellants' points of appeal not disclosing any error deemed reversible, the judgment under review must be in all things affirmed.